1  Jessica L. Lukasiewicz (admitted *pro hac vice*)
   Jonathan W. Ferris (admitted *pro hac vice*)
2  **THOMAS & SOLOMON LLP**
   693 East Avenue
3  Rochester, NY 14607
   Telephone: 585-272-0540
4  jlukasiewicz@theemploymentattorneys.com
   jferris@theemploymentattorneys.com
5  (585) 272-0540
6
7  Adam B. Wolf (Bar No. 215914)
   **PEIFFER WOLF CARR KANE & CONWAY,**
8  **A PROFESSIONAL LAW CORPORATION**
   4 Embarcadero Center, Suite 1400
9  San Francisco, CA 94111
   awolf@peifferwolf.com
10 (415) 766-3545
11
12 *Attorneys for Plaintiffs*

   **UNITED STATES DISTRICT COURT**
13 **NORTHERN DISTRICT OF CALIFORNIA**

14 JACI HUTTO and JENNIFER MELNYK,          Case No. 3:20-cv-07541-MMC
   *individually and as representatives of the*
15 *class,*                                  **PLAINTIFFS' NOTICE OF MOTION AND**
                                             **MOTION FOR PRELIMINARY APPROVAL**
16                                           **OF CLASS ACTION SETTLEMENT**
                    Plaintiffs,
17                                           **Date:** February 12, 2021
             v.                              **Time:** 9:00 a.m.
18                                           **Courtroom:** 7, 19th Floor
                                             **Judge:**  Hon. Maxine M. Chesney
19 ALBERTSONS     COMPANIES,     INC.,
   ALBERTSON'S    LLC,    ALBERTSONS
20 COMPANIES, LLC, NEW ALBERTSONS,
   L.P.,  ALBERTSONS    STORES    SUB
21 HOLDINGS, LLC, AB ACQUISITION LLC,
   AB MANAGEMENT SERVICES CORP.,
22 AMERICAN FOOD AND DRUG LLC, INK
   HOLDINGS,  LLC,  and  ALBERTSON'S
23 HOLDINGS LLC,
24
                    Defendants.
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... iii

NOTICE OF MOTION ................................................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

INTRODUCTION ........................................................................................................................ 1

I.      FACTUAL AND PROCEDURAL BACKGROUND .................................................. 2

   A.      The Albertsons Action ........................................................................................... 2

   B.      The Safeway Action ................................................................................................. 3

   C.      The Vons Actions ..................................................................................................... 4

   D.      Settlement Negotiations .......................................................................................... 5

II.     TERMS OF THE PROPOSED SETTLEMENT ......................................................... 6

   A.      The Proposed Settlement Class ............................................................................. 6

   B.      Settlement Amount and Calculation of Benefits ................................................ 7

   C.      Service Awards ......................................................................................................... 9

   D.      Attorneys' Fees ........................................................................................................ 9

   E.      Administration of the Settlement Agreement ..................................................... 9

   F.      Settlement Notice Plan ......................................................................................... 10

   G.      Opt-Out and Objection Procedures ................................................................... 11

   H.      Released Claims ..................................................................................................... 11

ARGUMENT ............................................................................................................................... 12

III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AS TO THE  PROPOSED SETTLEMENT CLASS ....................................................................... 13

   A.      The Class Representatives and Class Counsel have Adequately Represented the Settlement Class .................................................................................................... 13

   B.      The Proposed Settlement Agreement was Negotiated at Arm's Length .................... 14

   C.      The Relief Provided for the Settlement Class is Adequate ............................. 15

     1.      Continued litigation would entail costs, risks, and delay ........................................ 15

     2.      The proposed Settlement provides for an effective distribution of proceeds to the Settlement Class ................................................................................................... 17

     3.      The requested award of attorneys' fees and costs, including timing of payment, also support Settlement approval ...................................................................... 18

     4.      The parties have no other agreements pertaining to the Settlement........................... 18

   D.      The Proposed Settlement Treats Settlement Class Members Equitably Relative to Each Other.... ................................................................................................... 19

IV.   THIS COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASS AND CONDITIONALLY APPROVE THE CLASS SETTLEMENT ................................................. 19

  A.   The Prerequisites of Rule 23 are Satisfied ...................................................................20

    1.   Rule 23(a)(1): Numerosity Requirement..................................................................... 20

    2.   Rule 23(a)(2): Commonality Requirement .................................................................. 20

    3.   Rule 23(a)(3): Typicality Requirement ....................................................................... 21

    4.   Rule 23(a)(4): Adequacy of Representation Requirement ........................................... 22

    5.   Rule 23(b)(3): Predominance Requirement ................................................................. 22

    6.   Rule 23(b)(3): Superiority Requirement ..................................................................... 23

V.   THIS COURT SHOULD APPROVE THE SETTLEMENT NOTICE MATERIALS................. 24

VI.   THIS COURT SHOULD SET A DATE FOR A FINAL APPROVAL HEARING.................... 25

CONCLUSION.................................................................................................................................... 25

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:20-CV-07541-MMC

# TABLE OF AUTHORITIES

**Cases**

*Alberto v. GMRI, Inc.,* 252 F.R.D. 652 (E.D. Cal. 2008) ........................................................ 13

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................ 23

*Ashby v. Farmers Ins. Co. of Or.*, 592 F. Supp. 2d 1307 (D. Or. 2008) .................................... 8

*Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992) .......................................... 13

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) .............................................. 21

*G.F. v. Contra Costa Cty.*, No. 13-cv-3667, 2015 WL 4606078 (N.D. Cal. July 30, 2015) ................. 14

*Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019) .................................... 16, 20

*Gonzalez v. U.S. Immigration & Customs Enforcement*, 975 F.3d 788 (9th Cir. 2020).......................... 20

*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010) ............................................................ 12

*In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628 (C.D. Cal. 2009) ............................................ 20

*In re Pac. Enters. Sec. Litig.* 47 F.3d 373 (9th Cir. 1995) ....................................................... 18

*In re Uber FCRA Litigation*, No. 14-CV-05200-EMC, 2017 WL 2806698 (N.D. Cal. Jun. 29, 2017)..... 8

*In re Uber FCRA Litigation*, No. 14-CV-05200-EMC, Dkt. No. 299 (N.D. Cal. May 11, 2018) ............. 7

*Lewis v. Southwest Airlines Co.*, No. 16-cv-1538, 2018 WL 400775 (N.D. Tex. Jan. 11, 2018) ........... 16

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ............................................... 15

*Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. 19-cv-620, 2020 WL 5044418 (C.D. Cal. May 7, 2020) ........................................................................................................... *passim*

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ................................................................... 21

Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989) ........................................ 18

*Quiruz v. Specialty Commodities, Inc.*, No. 17-cv-3300, 2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) 20, 22, 23

*Ramirez v. TransUnion LLC*, 951 F.3d 1008 (9th Cir. 2020)....................................................... 21

*Safeco v. Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007)........................................................... 16

*Six Mexican Workers v. Az. Citrus Growers,* 904 F.2d 1301 (9th Cir. 1990) ......................................... 18

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).................................................................. 17

*Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017) ................................................................ 16, 20

*Walker v. Fred Meyer, Inc.*, 953 F.3d 1082 (9th Cir. 2020) ............................................... 16, 20

**Statutes**

15 U.S.C. § 1681(b)(2)(A)(i) ..................................................................................................... 1

15 U.S.C. § 1681n(a)(1)(A) ...................................................................................................... 7

15 U.S.C. § 1681n(a)(1)(B) ...................................................................................................... 7

15 U.S.C. §§1681p(1) ............................................................................................................... 7

15 U.S.C. §§1681p(2) ............................................................................................................... 7

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................. 1, 12

Fed. R. Civ. P. 23(a) ....................................................................................................... 2, 12, 19

Fed. R. Civ. P. 23(a)(1) ........................................................................................................... 20

Fed. R. Civ. P. 23(a)(2) ..................................................................................................... 20, 21

Fed. R. Civ. P. 23(a)(3) ..................................................................................................... 21, 22

Fed. R. Civ. P. 23(a)(4) ........................................................................................................... 22

Fed. R. Civ. P. 23(b)(3) ..................................................................................................... *passim*

Fed. R. Civ. P. 23(b)(3)(A) ..................................................................................................... 23

Fed. R. Civ. P. 23(b)(3)(B) ..................................................................................................... 23

Fed. R. Civ. P. 23(b)(3)(C) ..................................................................................................... 23

Fed. R. Civ. P. 23(b)(3)(D) ..................................................................................................... 23

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................................... 20

Fed. R. Civ. P. 23(c)(2)(B)(i) ................................................................................................. 24

Fed. R. Civ. P. 23(c)(2)(B)(ii) ................................................................................................ 24

Fed. R. Civ. P. 23(c)(2)(B)(iii) ............................................................................................... 24

Fed. R. Civ. P. 23(c)(2)(B)(iv) ............................................................................................... 24

Fed. R. Civ. P. 23(c)(2)(B)(v) ................................................................................................ 24

Fed. R. Civ. P. 23(c)(2)(B)(vi) ............................................................................................... 24

iv

Fed. R. Civ. P. 23(c)(2)(B)(vii) ........................................................................................ 24

Fed. R. Civ. P. 23(c)(3) ........................................................................................ 24

Fed. R. Civ. P. 23(e)(1)(B)(i) ........................................................................................ 12

Fed. R. Civ. P. 23(e)(1)(B)(ii) ........................................................................................ 12, 19

Fed. R. Civ. P. 23(e)(2) ........................................................................................ 1, 12, 13, 19

Fed. R. Civ. P. 23(e)(2)(A) ........................................................................................ 13, 14

Fed. R. Civ. P. 23(e)(2)(B) ........................................................................................ 14

Fed. R. Civ. P. 23(e)(2)(C) ........................................................................................ 15

Fed. R. Civ. P. 23(e)(2)(C)(iv) ........................................................................................ 19

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................ 19

Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee Notes ........................................................................................ 19

Fed. R. Civ. P. 23(e)(3) ........................................................................................ 15

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:20-CV-07541-MMC

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE THAT** on February 12, 2021, at 9:00 am, or as soon thereafter as the matter may be heard in the United States District Court for the Northern District of California, located at the San Francisco Courthouse, Courtroom 7, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102 before the Honorable Maxine M. Chesney, Plaintiffs Jaci Hutto and Jennifer Melnyk will and hereby do move this Court for an order granting preliminary approval of the class action settlement.

Plaintiffs bring this motion because a settlement has been reached with Defendants in this matter, and Rule 23 requires the Court's approval so that notice may be sent to the proposed class. As such, Plaintiffs seek an order: (1) preliminarily approving the Settlement Agreement as fair, reasonable, and adequate; (2) certifying the Settlement Class for settlement purposes; (3) approving the parties' Settlement Notice to be sent to Settlement Class Members in accordance with the notice plan set forth in the Settlement Agreement; and (4) setting a schedule for final settlement approval.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the settlement is fair, reasonable, and adequate pursuant to Rule 23(e)(2).

2.      Whether a class should be certified for settlement purposes pursuant to Rule 23.

3.      Whether the parties' proposed notice should be directed to the class.

4.      Whether the Court should set a schedule for final settlement approval.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Named Plaintiffs Jaci Hutto and Jennifer Melnyk ("Plaintiffs" or "Class Representatives"), individually and as representatives of the class, brought this action against Defendants Albertsons Companies, Inc., Albertson's LLC, Albertsons Companies, LLC, New Albertsons L.P., Albertsons Stores Sub Holdings, LLC, AB Acquisition LLC, AB Management Services Corp., American Food and Drug LLC, Ink Holdings, LLC, and Albertson's Holdings LLC (collectively "Albertsons" or "Defendants") alleging that Defendants violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681(b)(2)(A)(i), by procuring or causing to be procured consumer and investigative consumer reports of Plaintiffs and the putative class without providing legally compliant disclosures and authorizations.

The parties have agreed to resolve Plaintiffs' and the putative class' ("Settlement Class" or

"Settlement Class Members") claims in this action pursuant to the proposed Class Action Settlement Agreement, with exhibits, (hereinafter "Settlement" or "Settlement Agreement") attached hereto as **Exhibit A**.[1] The Settlement Agreement provides a fair, reasonable, and adequate recovery to the Settlement Class Members who have a potential claim under the FCRA against Defendants. Moreover, for purposes of settlement, the proposed Settlement Class meets all of the requirements of Fed. R. Civ. P. 23(a) and (b)(3) and should therefore be provisionally certified.

Accordingly, this Court should grant this motion in its entirety, and Plaintiffs respectfully request an order: (1) preliminarily approving the Settlement Agreement as fair, reasonable, and adequate; (2) certifying the Settlement Class for settlement purposes; (3) approving the parties' Settlement Notice to be sent to Settlement Class Members in accordance with the notice plan set forth in the Settlement Agreement; and (4) setting a schedule for final settlement approval.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Given that this Settlement is one part of a larger global settlement of four actions, Plaintiffs provide a brief factual background of each of those actions, as well as a summary of the complex and extensive settlement negotiations required to reach the global settlement. In short, each of the below actions that make up the global settlement concern whether three affiliated supermarket chains— Albertsons, Safeway, and Vons—unlawfully procured or caused to be procured consumer and investigative consumer reports of job applicants without making legally compliant disclosures and authorizations. *See* Lukasiewicz Aff., at ¶ 18.

### A.   The Albertsons Action

In this instant action, on October 24, 2019, Plaintiffs filed a Class Action Complaint and Demand for Jury Trial ("Complaint") in the District of Idaho against Defendants alleging a violation of the FCRA. *See* Dkt. No. 1 ("Albertsons Action"); Lukasiewicz Aff., at ¶ 3. The Albertsons Action Plaintiffs allege that Albertsons procured consumer and investigative consumer reports on employees and job applicants without obtaining legally compliant disclosures and authorizations. *Id.* at ¶ 4.

On January 21, 2020, Defendants filed an Answer to Plaintiffs' Complaint denying the allegations

---

[1]   All exhibits referenced herein are attached to the Affirmation of Jessica L. Lukasiewicz, sworn to on December 30, 2020 (hereinafter referred to as "Lukasiewicz Aff.").

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:20-CV-07541-MMC

and asserting twenty-six affirmative defenses. *See* Dkt. No. 17; Lukasiewicz Aff., at ¶ 5. Shortly thereafter, on January 30, 2020, the parties filed a stipulation staying the Albertsons Action in the District of Idaho pending a determination of the anticipated summary judgment motions in a related case in the Northern District of California, *Sullivan, et al. v. Safeway Inc., et al.*, No. 19-cv-3187 ("Safeway Action"), which would address issues pertinent to the Albertsons Action. *See* Dkt. No. 19. Pursuant to the stipulation, on January 30, 2020, Judge Winmill of the District of Idaho stayed the Albertsons Action pending a decision on the forthcoming motions for summary judgment in the Safeway Action. *See* Dkt. No. 20; Lukasiewicz Aff., at ¶ 6.

As discussed further below, in October 2020, the Albertsons Action Plaintiffs reached a settlement in principle. *Id.* at ¶ 27. On October 26, 2020, the parties in the Albertsons Action filed a stipulation with the District of Idaho transferring this action to this Court for the purpose of facilitating the settlement process of all the related actions resolved in the global settlement and to promote efficiency. *See* Dkt. No. 23; Lukasiewicz Aff., at ¶ 28. On October 27, 2020, Judge Winmill of the District of Idaho transferred the Albertsons Action for settlement purposes only to this Court pursuant to the parties' stipulation. *See* Dkt. No. 24; Lukasiewicz Aff., at ¶ 29. On October 30, 2020, the Safeway Action plaintiffs filed an administrative motion to relate the Albertsons Action to the Safeway Action, again for settlement purposes only. *See* Lukasiewicz Aff., at ¶ 30; Safeway Action, Dkt. No. 84. On November 2, 2020, the court granted that motion, and this action was found to be related to the Safeway Action. *See* Lukasiewicz Aff., at ¶ 31; Safeway Action, Dkt. No. 88.

**B.**     **The Safeway Action**

Herein, Plaintiffs provide a brief recitation of the factual and procedural history, however, a more detailed history is discussed in the Motion for Preliminary Approval that is being simultaneously filed in *Sullivan, et al. v. Safeway Inc., et al.*, No. 19-cv-3187. *See* Safeway Action, Dkt. No. 98.

Prior to consolidation in the Safeway Action, there were originally two separate class action complaints filed against Safeway, Inc. ("Safeway"), as well as other defendants.

First, on June 6, 2019, plaintiffs Johanna Mathews and Sharmarray Ross filed a class action complaint in Alameda County Superior Court against defendants Safeway and Albertsons Companies, Inc. for violations of the FCRA and several California state law claims. *See Mathews, et al. v. Safeway*

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:20-CV-07541-MMC

*Inc., et al.*, No. 19-cv-4261, Dkt. 1-1; Lukasiewicz Aff., at ¶ 7. On July 24, 2019, Safeway filed an answer in Superior Court in the *Mathews* action and removed the case to the Northern District of California the next day. *See id.*, Dkt. No. 1; Lukasiewicz Aff., at ¶ 7. Second, on June 7, 2019, plaintiffs Kendra Sullivan and Marianna Williams filed a class action complaint in the Northern District of California also against Safeway, as well as other defendants that were subsequently dismissed upon a motion by Safeway, similarly asserting violations of the FCRA, ICRAA, and CCRAA. *See Sullivan, et al. v. Safeway Inc., et al.*, No. 19-cv-3187, Dkt. No. 1; Lukasiewicz Aff., at ¶ 8.

The primary claim at issue in the Safeway Action pertains to Safeway's alleged violation of the FCRA by procuring consumer and investigative consumer reports on employees and job applicants without making legally compliant disclosures and authorizations. *See* Safeway Action, Dkt. No. 55; Lukasiewicz Aff., at ¶ 10.

On March 4, 2020, with multiple disputes regarding discovery to be resolved, the parties agreed to mediate the Safeway Action. *See* Safeway Action, Dkt. No. 64; Lukasiewicz Aff., at ¶ 13. The Court thereafter stayed the case pending mediation. *See* Safeway Action, Dkt. No. 65. *See also* Lukasiewicz Aff., at ¶ 13.

### C. The Vons Actions

Similar to the Safeway Action, the *Drew, et al. v. The Vons Companies, Inc.* and *Gilman v. The Vons Companies* actions ("Vons Actions") involve two separately filed class action complaints against The Vons Companies, Inc. ("Vons"), as well as other related defendants.

First, on February 20, 2020, plaintiffs Kysha Drew and Jeannie Jones filed a class action complaint in the Central District of California against Vons and other related defendants similarly alleging violations of the FCRA and ICRAA as those alleged in the Safeway Action. *See Drew, et al. v. The Vons Companies, Inc., et al*, No. 20-cv-347, Dkt. No. 1; Lukasiewicz Aff., at ¶ 14. Like the Safeway Action, plaintiffs Drew and Jones allege that Vons procured consumer and investigative consumer reports on employees and job applicants without obtaining legally compliant disclosures and authorizations. *See* Lukasiewicz Aff., at ¶ 14.

Second, on April 8, 2020, plaintiff Staci Gilman also filed a class action complaint in the Central District of California against Vons alleging a violation of the FCRA, as well as an individual ICRAA

claim. *See Gilman v. The Vons Companies, Inc., et al.*, No. 20-cv-681, Dkt. No. 1; Lukasiewicz Aff., at ¶ 15. On April 13, 2020, the later filed *Gilman* action was reassigned to Judge David O. Carter presiding over the first-filed *Drew* matter finding the *Gilman* action to be related to the same transactions, happenings, or events as the *Drew* action. *See id.*, Dkt. No. 11. *See also* Lukasiewicz Aff., at ¶ 15.

### D.   Settlement Negotiations

As discussed above, this Settlement is one part of a larger global settlement of four related cases referenced above. The Albertsons Action, Safeway Action, and Vons Actions all center on the same dispute—whether three affiliated supermarket chains—Albertsons, Safeway, and Vons—unlawfully procured or caused to be procured consumer and investigative consumer reports of job applicants without making legally compliant disclosures and authorizations. *See* Lukasiewicz Aff., at ¶ 18. The defendants in the Safeway Action and the Vons Actions, Safeway, Inc. and The Vons Companies, Inc., are subsidiaries of Albertsons Companies, Inc. (the primary defendant in the Albertsons Action). *See id.* at ¶ 21. The defendants in each of the above-referenced actions are represented by the same defense counsel. *See id.* at ¶ 18. As a result, there has been significant overlap in the settlement of the cases.

Prior to commencing formal settlement negotiations, the parties in the Safeway Action agreed to the production of documents sufficient for the Safeway Action plaintiffs to evaluate the merits of their claims and potential damages. Safeway produced documents used in its hiring process as part of this production to assist in a potential resolution of the Safeway Action. *See id.* at ¶ 19. During the course of preparing for mediation in the Safeway Action, the defendants in the Vons Actions requested that the parties also discuss resolution of the Vons Actions during the mediation scheduled for June 2020. *See id.* at ¶ 20. Defendant Vons confirmed that it used similar disclosure documents as Safeway had during the covered periods since they are both affiliated with the same parent company, Albertsons Companies, Inc. Lukasiewicz Aff., at ¶ 21. Since both the Safeway Action and the Vons Actions involved the same legal issues and disclosures used during the covered period, the parties agreed to include the Vons Actions in the mediation. *See id.* at ¶ 22.

On June 3, 2020, the parties in the Safeway and Vons Actions participated in an all-day mediation session with the Honorable Ronald Sabraw (Ret.). *See id.* at ¶ 23. *See also* **Exhibit B** (Judge Sabraw's C.V.). Following the mediation, the parties in the Safeway and Vons Actions continued to engage in

settlement discussions facilitated through the continued use of Judge Sabraw, which resulted in a settlement of both the Safeway and Vons Actions. *See* Lukasiewicz Aff., at ¶ 24. The parties in the Safeway and Vons Actions were ultimately able to reach an agreement in principle to resolve the cases. *Id.* On August 28, 2020, the parties in the Safeway and Vons Actions signed a Memorandum of Understanding ("MOU") having reached a settlement in principle.[2] *See id.* at ¶ 25.

As the Albertsons Action similarly involved the same central question about the requisite disclosure document, similar underlying disclosure documents, and had defendants related to those in the Safeway and Vons Actions, after exchanging the necessary documentation, the parties in the Albertsons Action used the constructs of the settlement in the Safeway and Vons Actions, to similarly reach a resolution, thus leading to a global resolution of all four actions. *See id.* at ¶ 26. On October 19, 2020, the parties in the Albertsons Action signed a MOU having reached a settlement in principle. *See* Lukasiewicz Aff., at ¶ 27.

The settlement in the Safeway and Vons Actions is also contingent upon approval of the Settlement in the Albertsons Action. *See* **Exhibit A**, at ¶ 53. The Albertsons Action and Settlement, however, are separate from the Safeway and Vons Actions and settlement. As a result, Plaintiffs now seek preliminary approval of this Settlement in the Albertsons Action.

## II.    TERMS OF THE PROPOSED SETTLEMENT

### A.    The Proposed Settlement Class

Pursuant to the Settlement Agreement, the Settlement Class is defined as follows:

> All employees and/or prospective employees of Defendants within the United States who were the subject of a consumer report by Defendants anytime between and including October 24, 2017 and November 25, 2019, inclusive.

*See* **Exhibit A**, at ¶ 28. *See also* Lukasiewicz Aff., at ¶ 36.

Consistent with the Northern District's Guidance, the Settlement Class is substantially similar to Plaintiffs' proposed litigation class. *See* Complaint, Dkt. 1 at ¶ 63; **Exhibit A**, at ¶ 28. The only difference

---

[2]    On December 30, 2020, the parties in the *Drew* and *Gilman* actions filed stipulations to stay their respective cases in the Central District of California in order to facilitate the settlement process. *See* Lukasiewicz Aff., at ¶ 32. On December 30, 2020, the parties in the Safeway and Vons Actions filed a stipulation in the Safeway Action to file an amended consolidated complaint adding the plaintiffs and defendants from the *Drew* and *Gilman* actions to the Safeway Action for settlement purposes only. *See id.* at ¶ 33.

between the proposed litigation class and the Settlement Class is the class period. The Settlement Class has a shorter time frame which is the result of: (1) the changes to the disclosure form that Defendants implemented on approximately November 25, 2019; and (2) a two-year (as opposed to five year) statute of limitations. *See* Complaint, Dkt. 1 at ¶ 63; **Exhibit A**, at ¶ 28. *See* Lukasiewicz Aff., at ¶ 38. The statute of limitations was reduced to two years to reflect a statute of limitations challenge by Defendants that would have made it extremely difficult for Plaintiffs to get a five-year class certified.[3] *Id.* Claims that accrued during the longer limitations period are not being released as part of this settlement. *Id.* Notably, the language in the disclosure form that Plaintiffs alleged violated FCRA is no longer included in the current version of the disclosure form.[4] **Exhibit A**, at ¶ 32.

### B.    Settlement Amount and Calculation of Benefits

The Settlement Agreement creates a fund of One Million Thirty Seven Thousand Four Hundred Seventy Four Dollars and Ten Cents ($1,037,474.10), which represents the maximum total payment that Defendants will pay under the Settlement Agreement, inclusive of payments for Individual Settlement Payments for Settlement Class Members who submit a timely, valid Claim Form (*see* Settlement Agreement ("SA"), **Exhibit I** (Claim Form)), class counsel's fees and costs paid to Thomas & Solomon LLP ("Class Counsel"), service awards for the Class Representatives, and settlement expenses (i.e., Settlement Notice costs, etc.) ("Gross Settlement Sum").[5] *See* Lukasiewicz Aff., at ¶ 39; **Exhibit A**, at ¶ 15.

The FCRA provides for statutory damages from $100 to $1,000 for "willful" violations. *See* 15 U.S.C. § 1681n(a)(1)(A), (B). Courts have concluded that the most important factor in assessing the amount of statutory damages under the FCRA "is the jury's perception of the importance . . . of the rights

---

[3]    Under the FCRA, claims must be filed within the earlier of (1) "2 years after the date of discovery by the plaintiff of the violation that is the basis" for the FCRA claim, or (2) "5 years after the date on which the violation that is the basis for such liability occurs[,]" without respect to the plaintiff's knowledge of the violation.  15 U.S.C. §§1681p(1)-(2).

[4]    Defendants will move the court for an order that the disclosure, as revised, is compliant.  *See, e.g., In re Uber FCRA Litigation*, No. 14-CV-05200-EMC, Dkt. No. 299 (N.D. Cal. May 11, 2018) (Consent Order adopting the parties' stipulation that the defendant's revised disclosure complies with the FCRA).

[5]    The claims administrator, American Legal Claims Services LLC, will assist Defendants in preparing the CAFA notice and serving it on governmental authorities in accordance with 28 U.S.C. § 1715. *See* **Exhibit A**, at ¶ 57.

and protections conferred on the consuming public by FCRA's [] notice requirements." *Ashby v. Farmers Ins. Co. of Or.*, 592 F. Supp. 2d 1307, 1318 (D. Or. 2008); Lukasiewicz Aff., at ¶ 41. Although Plaintiffs consider the right to meaningful disclosure protected by FCRA to be important, they acknowledge that this case does not involve the kind of conduct likely to inflame the passion of a jury and liability would not be certain. Lukasiewicz Aff., at ¶ 41. Plaintiffs thus anticipate that – assuming liability were found - - damages at trial may be toward the low end of the potential range (i.e., approximately $6.8 million [68,181 class members x $100]). *See id.*

The Individual Settlement Payments will be paid out on a *pro rata* basis to the Settlement Class Members who submit a timely, valid Claim Form. *See* Lukasiewicz Aff., at ¶ 45; **Exhibit A**, at ¶ 40. In the event the claimed amounts by Settlement Class Members exceed the Net Settlement Sum,[6] the amounts paid out to the Settlement Class Members will be reduced *pro rata* so that the maximum payout to Settlement Class Members does not, and cannot, exceed the Net Settlement Sum. *See* **Exhibit A**, at ¶ 15. Plaintiffs estimate based on claims rates in similar cases, the anticipated recovery for the Settlement Class Members who submit timely claim forms under the Settlement Agreement would be approximately $103.86 per person, which exceeds the low end of the statutory damages provided under the FCRA.[7] *See* Lukasiewicz Aff., at ¶ 42. *See also* **Exhibit C** (Analogous Claims-Made FCRA Settlements Administered by the Claims Administrator). Courts routinely approve FCRA class settlements for disclosure type violations in the range of $5 to $25 per person, including in a claims-made structure. *See, e.g., In re Uber FCRA Litigation*, No. 14-CV-05200-EMC, 2017 WL 2806698, at *2 (N.D. Cal. Jun. 29, 2017) (granting

---

[6]    "Net Settlement Fund" means the Gross Settlement Sum less the amount of Class Counsel's Fees and Costs, Settlement Expenses, and the Service Awards, if and as approved by the Court. **Exhibit A**, at ¶ 17.

[7]    The *Sullivan* and *Hutto* Actions both include the same amount of money per Class Member in the Gross Settlement Sum. *See* Lukasiewicz Aff., at ¶ 26. There are very small differences in the estimated *pro rata* settlement distributions per claimant in each action due to differences in the number and size of the named plaintiff awards and administrative costs. Because the Net Settlement Sum is divided *pro rata* among Class Members who file valid and timely claims, this amount will vary depending on the number of Settlement Class Members who file valid and timely claims. *Id.* at ¶ 44. For more detail, *see id.* at ¶¶ 42, 44. If there is a 25% claim rate, Class Counsel estimates Authorized Claimants would receive a net payment of approximately $41.54, and even in the unlikely event that all Settlement Class Members file claims forms, Settlement Class Members would still receive net payment of more than $10 each. *Id.* at ¶ 44.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:20-CV-07541-MMC

preliminary approval of claims-made FCRA settlement with estimated payment of $18 per claimant at 15% claim rate). *See also* Lukasiewicz Aff. at ¶ 43 (collecting cases of approval of FCRA class settlements for disclosure type violations in the range of $5 to $25).

### C.   Service Awards

Class Counsel will apply to the Court for service awards in the sum of Six Thousand Dollars and Zero Cents ($6,000) for each proposed Class Representatives. *See* Lukasiewicz Aff., at ¶ 66; **Exhibit A**, at ¶ 25. The allocation of the service awards has been determined based upon the amount of time expended by the Class Representatives in actively pursuing this action, including the inherent risks of being a named plaintiff. *See* Lukasiewicz Aff., at ¶ 67; **Exhibit A**, at ¶ 25. These service awards reflect the work the Class Representatives have performed in assisting Class Counsel with this litigation, including numerous telephonic conferences with Class Counsel, assisting with drafting the Complaints, and the work they will continue to perform through the approval process of the Settlement Agreement. *See* Lukasiewicz Aff., at ¶ 68; **Exhibit A**, at ¶ 25.

### D.   Attorneys' Fees

Class Counsel intends to seek the Court's approval of attorneys' fees and costs in a reasonable amount. *See* Lukasiewicz Aff., at ¶ 64; **Exhibit A,** at ¶¶ 8, 15. Whatever amount is approved by the Court, if any, shall be paid from and is included in the Gross Settlement Sum and shall not in any way increase the amount of the Gross Settlement Sum. **Exhibit A.** at ¶ 8. Defendants do not intend to object to a reasonable request for attorneys' fees and costs. *Id.* Class Counsel intend to seek the "benchmark" 25% of the common fund in attorneys' fees and have submitted information regarding their costs and lodestar, and will submit more detailed information should the Court grant preliminary approval. Lukasiewicz Aff., at ¶¶ 60-65.

### E.   Administration of the Settlement Agreement

After the parties reached a proposed settlement in the Safeway and Vons Actions, the parties sent out a request for bids to six experienced settlement administrators (Simplurius, ILYM, JND, CPT Group, American Legal Claims Services LLC, and RG2) and asked them to submit proposals for the administration of that settlement. *See id.* at ¶ 48. The parties in the Safeway and Vons Actions selected American Legal Claims Services LLC to administer that settlement with an estimated settlement

administration cost of between $47,000 and $74,000 depending upon the percent of Class Members with email contact information and the claim rate. *See id.* This was one of the lowest bids received, and ALCS was also amongst the most responsive to the Parties' inquiries regarding its proposed plan for administration, as well was able to meet Defendants' need for data security of the Settlement Class Member's personal information. *Id.* In addition, American Legal Claims Services LLC had a good understanding of the tasks required to be performed and has handled numerous similarly-sized FCRA settlements. *Id. See also* **Exhibit D** (American Legal Claims Services LLC's C.V.). Given American Legal Claims Services LLC's experience in administrating FCRA settlements, and the fact that it was one of the lowest bids received, the Parties in this action also selected American Legal Claims Services LLC to administer this settlement for an estimated administration cost of $58,000. *See* Lukasiewicz Aff., at ¶ 49.

Pursuant to the Settlement Agreement, American Legal Claim Services LLC, or such other third-party administrator approved by the Court ("Claims Administrator"), will perform all of the administrative duties pertaining to the administration of the Settlement Agreement. **Exhibit A**, at ¶ 4; Lukasiewicz Aff., at ¶ 50. While Class Counsel has not had the opportunity to engage with this specific Claims Administrator in the past two years, given their experience and ability to meet the expectations of all parties in terms of timing, costs, and data security, American Legal Claim Services, LLC was the best option available. Lukasiewicz Aff., at ¶ 51. The Settlement Administration Protocol (*see* SA, **Exhibit D**) sets forth the Claims Administrator's role and duties in detail, including locating, obtaining, and submitting Claim Forms, Claim Form review and processing, individual settlement payment calculation and payment, and deadlines proscribed in the Settlement Agreement.

### F.    Settlement Notice Plan

The Claims Administrator shall distribute the Settlement Notice and payments to Settlement Class Members that submit a timely, valid Claim Form. **Exhibit A**, at ¶ 43(a). The Settlement Notice procedure shall consist of (1) emailing the Summary Notice (*see* SA, **Exhibit B**) to each Settlement Class Member for whom an email address is available in the Defendants' records; and (2) sending a postcard containing the Summary Notice to each Settlement Class Member for whom the initial email was determined to be undeliverable or for whom Defendants do not have an email address. *See id.* The postcard containing the

10

Summary Notice will instruct Settlement Class Members to view the settlement website, which will contain the Long Form Notice (*see* SA, **Exhibit A**), the Settlement Agreement, the order granting preliminary approval of the Settlement (if approved), and the Claim Form. *Id.* The Claim Form will allow the Settlement Class Member to choose whether they would like to receive payment by check, PayPal, or Apple Pay. *Id.*; SA, **Exhibit I**. The postcard containing the Summary Notice will also inform Settlement Class Members of the IVR toll-free telephone number that the Claims Administrator has set up to answer any questions. **Exhibit A**, at ¶ 43(b).

Prior to the dissemination of the Settlement Notice, the Claims Administrator will also establish an Internet website that will inform Settlement Class Members of the terms of the Settlement Agreement, their rights, dates and deadlines, and related information. *Id.* at ¶ 43(c). The website shall include, in .pdf format the following: (i) the Long Form Notice; (ii) the Claim Form; (iii) the preliminary approval order (if so approved); (iv) the Settlement Agreement and exhibits; (v) the most recent Complaint filed in this action; and (vi) any other materials agreed upon by the parties and/or required by the Court. *Id.* The Internet website shall provide Settlement Class Members with the ability to submit a Claim Form electronically. *Id.*

### G.   Opt-Out and Objection Procedures

The Settlement Notice will inform Settlement Class Members that they have the right to opt-out of the Settlement, as well as provide the deadlines and procedures for exercising such right. *See id.* at ¶ 46. The Settlement Notice will also advise Settlement Class Members of their ability to object to the settlement. *See id.* at ¶ 47. Only Settlement Class Members who do not opt-out of the Settlement may file objections. *Id.*

### H.   Released Claims

If the Settlement Agreement is approved, Plaintiffs and Settlement Class Members who do not timely and properly opt-out of the Settlement Agreement will be deemed to forever discharge each of the Defendants, and their affiliates as defined paragraph 24 of the Settlement Agreement ("Released Parties") from the following claims ("Released Claims"):

> [A]ny and all individual and/or class action, collective action or mass action, asserting any claims based on the facts alleged in the Complaint in this action including but not limited to claims under the FCRA or any state and local law equivalent, and any and all derivative

11

claims arising during the period from and including October 24, 2017 through and including the date of preliminary settlement approval. The Released Claims include claims under the FCRA and equivalent or corresponding state laws, including but not limited to all statutory, compensatory, actual and punitive damages, restitution, declaratory, injunctive and equitable relief, and attorneys' fees and expenses, arising from or related to background checks, investigative consumer reports, and/or consumer reports ordered through the date of preliminary settlement approval, including the right to seek relief for such Released Claims by means of a class action, collective action or mass action or proceeding.

**Exhibit A**, at ¶ 23. The release tracks the claims in the Complaint.  *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (explaining that a settlement agreement may only release claims "based on the identical factual predicate as that underlying the claims in the settled class action").

The Settlement Notice will inform the Settlement Class Members that they are releasing FCRA and equivalent state law claims. *Id. See also* SA, **Exhibits A**, **B**. Claims of persons outside of the Settlement Class who were screened before October 24, 2017 and after November 25, 2019 are not being released as part of the Settlement Agreement. *Id.*

## ARGUMENT

As set forth below, this Court should grant preliminary approval of the Settlement Agreement and certify the Settlement Class for settlement purposes because all of the Rule 23 requirements are met. In evaluating a proposed class settlement, the court must first direct notice to all class members upon a showing by the parties that the court will likely be able to: (1) approve the settlement under Rule 23(e)(2); and (2) certify the class for purposes of judgment on the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B)(i), (ii).

In short, the Settlement Agreement provides a substantial recovery to the Settlement Class, making the Settlement fair, reasonable, and adequate under to the Rule 23(e)(2) factors and worthy of this Court's approval. Additionally, certification of the Settlement Class for settlement purposes is appropriate under Rule 23(a) and (b)(3). Lastly, the parties' proposed Settlement Notice provides the best notice that is practicable under the circumstances.

Accordingly, as discussed below, this Court should grant preliminary approval of the settlement and find the Settlement Agreement fair, reasonable, and adequate, certify the Settlement Class for settlement purposes, and direct the proposed Settlement Notice to be sent to Settlement Class Members.

1    III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AS TO THE
2            PROPOSED SETTLEMENT CLASS

3            This Court should grant preliminary approval of the Settlement because the proposed Settlement

4    is fair, reasonable, and adequate and the Rule 23(e)(2) factors all weigh in favor of approval.  Class

5    actions are generally subject to a "strong judicial policy" favoring settlement. *Alberto v. GMRI, Inc.,* 252

6    F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir.

7    1992)).

8            Rule 23(e)(2) sets forth several factors to be considered by a court in determining whether a class

9    action settlement is fair, reasonable, and adequate. Such factors include whether: (1) the class

10   representatives and class counsel have adequately represented the class; (2) the proposal was negotiated

11   at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members

12   equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(A)-(D). As discussed below, these Rule

13   23(e)(2) factors all weigh in favor of preliminary approval of the parties' Settlement.

14           A.      The Class Representatives and Class Counsel have Adequately Represented the
15                   Settlement Class

16           First, Rule 23(e)(2)(A) weighs in favor of preliminary approval of the Settlement because the

17   Class Representatives and Class Counsel have adequately represented the Settlement Class. The Class

18   Representatives have been actively involved in assisting Class Counsel with this litigation since it began,

19   including numerous telephonic conferences with Class Counsel, assisting with drafting the Complaints,

20   and the work they will continue to perform through the approval process of the Settlement Agreement.

21   *See* Lukasiewicz Aff., at ¶ 67. The Class Representatives have also adequately represented the interests

22   of the Settlement Class by retaining competent counsel experienced in class action litigation. *See id.* at

23   ¶¶ 52-59.

24           Additionally, Class Counsel has also adequately represented the Settlement Class. Class Counsel

25   concentrates its practice in employment litigation, and its attorneys are experienced in class actions. *See*

26   *id.*  Additionally, Class Counsel has committed, and will continue to commit, the resources necessary to

27   litigate and resolve Plaintiffs' and Settlement Class Members' claims. *See id.* at ¶¶ 60, 63, 65. Further,

28   Class Counsel has spent substantial time in investigating Plaintiffs' claims, vigorously prosecuting this

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:20-CV-07541-MMC

1  action, and negotiating a favorable settlement for the Settlement Class through extensive negotiations.

2  *Id.* To date Class Counsel has expended approximately 315 hours of attorney and 75 hours of paralegal

3  time in litigating this matter. *Id.* at ¶ 63. These efforts have also required Class Counsel to advance

4  approximately $7,400 in litigation expenses on behalf of the Settlement Class, with no assurances that

5  those expenses would be reimbursed. Lukasiewicz Aff., at ¶ 65.

6      Accordingly, Rule 23(e)(2)(A) weighs in favor of preliminary approval of the Settlement because

7  the Class Representatives and Class Counsel have adequately represented the Settlement Class.

8         **B.    The Proposed Settlement Agreement was Negotiated at Arm's Length**

9      Second, Rule 23(e)(2)(B) weighs in favor of preliminary approval of the Settlement Agreement

10  because the proposed Settlement was negotiated at arm's length. As discussed above, this Settlement is

11  one part of a larger global settlement of four related cases, the Safeway Action, the Vons Actions, and

12  this case, the Albertsons Action. Each of these related cases center on the same dispute: whether three

13  affiliated supermarket chains—Albertsons, Safeway, and Vons (all represented by the same counsel)—

14  unlawfully procured or caused to be procured consumer and investigative consumer reports of job

15  applicants without making legally compliant disclosures and authorizations. *See* Lukasiewicz Aff., at ¶

16  18.

17      This action similarly involved the same central question about the requisite disclosure document

18  and had related Defendants to those in the Safeway and Vons Actions. *See id.* at ¶ 26.  After exchanging

19  the necessary documentation, the parties here used the constructs of the settlement in Safeway and Vons

20  Actions through Judge Sabraw to similarly reach this Settlement, thus leading to a global resolution of

21  all four actions. *Id.* As such, "the assistance of an experienced mediator in the settlement process confirms

22  that the settlement is non-collusive." *See G.F. v. Contra Costa Cty.*, No. 13-cv-3667, 2015 WL 4606078,

23  at *13 (N.D. Cal. July 30, 2015) (citation omitted); Fed. R. Civ. P. 23(e)(2)(B), Advisory Committee

24  Notes (noting the importance of "the involvement of a neutral or court-affiliated mediator or facilitator

25  in [settlement] negotiations").

26      Accordingly, Rule 23(e)(2)(B) weighs in favor of preliminary approval of the Settlement

27  Agreement because the proposed Agreement was negotiated at arm's length.

28

### C.   The Relief Provided for the Settlement Class is Adequate

Third, Rule 23(e)(2)(C) weighs in favor of preliminary approval of the settlement because the relief provided for the class is adequate—indeed, substantial. This factor considers numerous factors bearing on whether the relief afforded under a settlement is reasonable, including: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (3) the terms of any proposed award of attorneys' fees, including timing of payment; and (4) any agreement required to be identified under Rule 23(e)(3). As set forth below, each subfactor of Rule 23(e)(2)(C) weighs in favor of preliminary approval.

### 1.   Continued litigation would entail costs, risks, and delay

Without a settlement, this case would be complex, expensive, and any relief obtained on behalf of the Settlement Class would be many years removed. For example, assuming no settlement had been reached, the parties would continue with significant class and merits discovery. This would necessarily involve significant motion practice concerning class certification and summary judgment, as well as potential motion to dismiss briefing. *See Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. 19-cv-620, 2020 WL 5044418, at *7 (C.D. Cal. May 7, 2020) (finding this subfactor to weigh in favor of preliminary approval where "[w]ithout the Settlement Agreement, the parties would be required to litigate class certification, as well as the ultimate merits of the case—a process which . . . is long and expensive"). Even after such motion practice, and regardless of who prevailed at trial, appeals would likely have been filed. Thus, the ultimate resolution of Plaintiffs' claims would be a long, arduous process requiring significant expenditures of time and money on behalf of both parties and the Court.

The cost, risk, and delay is especially pronounced in class action litigation, such as this action, as reinforced by the Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (citation omitted). While Plaintiffs believe that they would have been able to demonstrate that Defendants violated the FCRA's "standalone disclosure" requirement, that this action is appropriate for class certification, and that they would succeed on the merits of their claims, Defendants would vigorously defend against any wrongdoing and pursue their twenty-six affirmative defenses. *See* Dkt. No. 17. For example, Defendants have vigorously contested numerous unsettled issues in FCRA

litigation, including standing and statutory damages based on a willful violation. *See Noriesta*, 2020 WL 5044418, at \*7 (finding this subfactor to weigh in favor of preliminary approval in FCRA case where "the uncertain legal landscape create[d] substantial risk of proceeding to certification and trial").

Additionally, Plaintiffs believe that they would succeed on the merits because the disclosures Defendants used did not consist "solely" of the disclosure as made clear in recent Ninth Circuit decisions. *See, e.g.*, *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082 (9th Cir. 2020); *Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019); *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017). Nonetheless, Defendants had colorable arguments that their disclosure was compliant. *See, e.g.*, *Walker*, 953 F.3d at 1089 (holding a mention of investigative consumer reports in addition to consumer reports in the same disclosure does not violate the FCRA's stand-alone disclosure requirement). Without a settlement, Defendants would have argued that any extraneous language in the disclosure documents provided candidates was not a willful violation of the FCRA, which could have resulted in judgment for Defendant short of trial. *E.g., Lewis v. Southwest Airlines Co.*, No. 16-cv-1538, 2018 WL 400775, at \*5 (N.D. Tex. Jan. 11, 2018) (granting summary judgment for defendant based on lack of a willful violation when disclosure contained allegedly extraneous information). A finding of a mere negligent violation would not permit Plaintiffs or the putative class to obtain statutory damages and Defendants have argued that those Plaintiffs and Class Members who were hired could not seek actual damages – the only type of damages available for a mere negligent violation.

As the Ninth Circuit held, "if [the employer's] interpretation of the FCRA is merely objectively unreasonable, it does not follow that [the plaintiff] is entitled to statutory damages." *Syed,* 853 F.3d at 504-05. While Plaintiffs believe that a reading of the FCRA that lacks a foundation in the statutory text can support a finding of willfulness, Defendants have argued that the Supreme Court has found that only explicit guidance from circuit courts can support a finding of willfulness. *Safeco v. Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 (2007). Defendants contend that no appellate court had found certain challenged language extraneous before 2019, and that decision did not address whether there was a willful violation. *Gilberg*, 913 F.3d at 1174. Defendants also rely on the fact that it was not until 2020 that the Ninth Circuit attempted to address what it called "a matter of ***first impression***" exactly "what qualifie[d] as part of that 'disclosure . . . that a consumer report may be obtained for employment purposes.'" *Walker*, 953

F.3d at 1084 (emphasis added). Depending on the facts developed during discovery, Defendants may have advanced an argument that Plaintiffs and/or some Class Members lacked standing if they did not suffer a concrete injury. *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016). Accordingly, this subfactor weighs in favor of preliminary approval.

> 2.    The proposed Settlement provides for an effective distribution of proceeds to the Settlement Class

The Settlement provides an effective distribution of proceeds to the Settlement Class because the Net Settlement Sum will be paid out on a *pro rata* basis to the Settlement Class Members who submit a timely, valid Claim Form. *See* Lukasiewicz Aff., at ¶ 45; **Exhibit A**, ¶ 15, 40; SA, **Exhibit I**. In the event the claimed amounts by Settlement Class Members exceed the Net Settlement Sum, the amounts paid out to the Settlement Class Members will be reduced *pro rata* so that the maximum payout to Settlement Class Members does not, and cannot, exceed the Net Settlement Sum. *See* **Exhibit A**, at ¶ 15. Such a *pro rata* distribution will ensure all Settlement Class Members are equally compensated from the Settlement. Additionally, Settlement Class Members will be required to complete a Claim Form and establish their standing to participate in the settlement by certifying that they were confused by the disclosure forms and/or were unaware that they were consenting to the procurement of a consumer report and/or investigative consumer report. *See* SA, **Exhibit I**. Additionally, the Settlement is non-reversionary, and to the extent any Settlement Class Member's check is not cashed within the time proscribed in the Settlement Agreement, that amount for each such check will be distributed to those Settlement Class Members who submitted a timely, valid Claim Form who have cashed checks on a *pro rata* basis in a secondary distribution, or, if it is administratively infeasible, on a *cy pres* basis. **Exhibit A**, at ¶ 48(e); Lukasiewicz Aff., at ¶ 46. The Parties are continuing to confer regarding a proposed *cy pres* beneficiary and will submit a proposal to the Court at a later date, including information regarding how the proposed *cy pres* recipient is related to the subject matter of the lawsuit and the class members. Lukasiewicz Aff., at ¶ 47.

Accordingly, this subfactor weighs in favor of preliminary approval.

3.      The requested award of attorneys' fees and costs, including timing of payment, also support Settlement approval

Class Counsel was required to undertake significant legal work on behalf of the Settlement Class, including investigating the Plaintiffs' claims, communicating with large numbers of Class Members, drafting the Complaint, conducting legal research on the pertinent legal issues involved in this case, including the evolving 9th Circuit caselaw on the relevant legal issues, reviewing relevant disclosure documents, participating in settlement negotiations, and preparing and filing this motion and supporting documents. *See* Lukasiewicz Aff., at ¶ 60. Such work is reflected in Class Counsel's over 315 hours of attorney and 75 hours of paralegal time spent litigating this case. *See id.* at ¶ 63. Additionally, Class Counsel intends to seek reimbursement of costs and expenses they have incurred in litigating this case with no assurances of recoupment—currently approximately $7,400—which includes costs for local counsel, process servers, computer research, and postage. *See id.* at ¶ 65.

Class Counsel will also file a motion requesting that this Court approve an attorneys' fee award of Two-Hundred Fifty-Nine Thousand Three Hundred Sixty-Eight Dollars and Fifty-Three Cents ($259,368.53), or 25% of the Gross Settlement Sum. *See id.* at ¶ 64.[8] This requested fee award conforms to the Ninth Circuit's "benchmark" reasonable fee award and is less than some courts in this Circuit have awarded.[9]

Accordingly, this subfactor weighs in favor of preliminary approval.

4.      The parties have no other agreements pertaining to the Settlement

The Court must also evaluate any agreements made in connection with a proposed settlement.

---

[8] The Settlement Agreement contemplates that Plaintiffs will file a motion for an award of attorneys' fees and costs prior to the final approval hearing. *See* **Exhibit A**, at ¶ 39(a). If the Settlement is preliminary approved, Class Counsel will present further detail of the time and costs they have incurred in litigating this case from its inception and will make a showing that their requested fee is appropriate given the work performed and the risks undertaken by litigating a case on a contingent basis, without assurances of any compensation. *See* Lukasiewicz Aff., at ¶ 64.

[9] *See, e.g., Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989) (establishing 25% of the fund as the "benchmark" award that should be given in common fund cases, subject to adjustments when appropriate); *Six Mexican Workers v. Az. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990) (awarding 25% benchmark); *In re Pac. Enters. Sec. Litig.* 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% fee award).

18

Fed. R. Civ. P. 23(e)(2)(C)(iv). Here, the Settlement Agreement before the Court is the only agreement between the parties. *See* Lukasiewicz Aff., at ¶ 35.

Accordingly, this subfactor weighs in favor of preliminary approval.

### D.    The Proposed Settlement Treats Settlement Class Members Equitably Relative to Each Other

Finally, Rule 23(e)(2)(D) weighs in favor of preliminary approval of the settlement because the proposed Settlement Agreement treats Settlement Class Members equitably relative to each other. This factor concerns "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."   Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee Notes.

Here, the Settlement Agreement treats all Settlement Class Members equitably relative to each other. Indeed, the Net Settlement Fund will be distributed among all Settlement Class Members who submit timely, valid Claim Forms on a *pro rata* basis. *See* Lukasiewicz Aff., at ¶ 45; **Exhibit A**, at ¶¶ 15, 40. Such equal treatment is appropriate because all Settlement Class Members experienced the same harm Plaintiffs allege in that they each lacked a meaningful opportunity to consent to the procurement of a consumer report and/or investigative consumer report.

Accordingly, the Settlement is fair, reasonable, and adequate and all of the Rule 23(e)(2) factors weigh in favor of preliminary approval.

## IV.    THIS COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASS AND CONDITIONALLY APPROVE THE CLASS SETTLEMENT

Under the second prerequisite of directing notice to the Settlement Class, the Settlement Class must be likely to meet the requirements for certification. Fed. R. Civ. P. 23(e)(1)(B)(ii). The Court's threshold task is to determine, in accordance with Rule 23(a), whether the following prerequisites are satisfied: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. *See* Fed. R. Civ. P. 23(a)(1)-(4).

Where, as here, the parties propose a settlement class pursuant to Rule 23(b)(3), the Court is then tasked with determining whether "questions of law or fact common to class member predominate over

any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). If so, then the Court must "direct to class members the best notice that is practicable under the circumstances[.]" Fed. R. Civ. P. 23(c)(2)(B). As set forth below, all of the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, and this Court should certify the Class for settlement purposes and direct the parties' proposed Notice to the Class Members.

### A.     The Prerequisites of Rule 23 are Satisfied

#### 1.     Rule 23(a)(1): Numerosity Requirement

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable[.]" Defendants have provided Plaintiffs' Counsel with information indicating that the Settlement Class consists of approximately 68,181 individuals. Lukasiewicz Aff., at ¶ 40. As such, the numerosity requirement is satisfied. *See, e.g.*, *Quiruz v. Specialty Commodities, Inc.*, No. 17-cv-3300, 2020 WL 6562334, at *4 (N.D. Cal. Nov. 9, 2020) ("Numerosity is presumed where the plaintiff class contains forty or more members.") (quoting *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009)).

Accordingly, Rule 23(a)(1) is satisfied because the Settlement Class is so numerous that joinder of all members is impracticable.

#### 2.     Rule 23(a)(2): Commonality Requirement

Rule 23(a)(2) requires "questions of law or fact common to the class[.]" As the Ninth Circuit has articulated, "[a]ll questions of fact and law need not be common to satisfy the [commonality requirement]. The existence of shared legal issues with divergent factual predicates is sufficient[.]" *Gonzalez v. U.S. Immigration & Customs Enforcement*, 975 F.3d 788, 807 (9th Cir. 2020).

Here, Defendants procured investigative and/or consumer reports as part of their job application process on Settlement Class Members. Such disclosures failed to comply with the FCRA because they contained extraneous information in violation of the FCRA's "standalone disclosure" requirements. On three recent occasions, the Ninth Circuit held that disclosures similar to the ones utilized by Defendants' in the instant case violate the FCRA. *Walker*, 953 F.3d at 1087; *Gilberg*, 913 F.3d at 1176-77; *Syed*, 853 F.3d 492. While Defendants modified the disclosure form during the class period, Plaintiffs disputed that

the modified forms were fully compliant.

There are therefore numerous common questions of law or fact, including: (1) whether Defendants obtained or caused to be procured background checks on employees and job applicants; (2) whether Defendants violated the FCRA by causing consumer reports and/or investigative consumer reports to be procured without providing the proper disclosure; (3) whether Defendants' violations of the FCRA were willful; (4) the proper measure of statutory damages; and (5) the proper form of declaratory relief. These issues focus on Defendants' conduct as it applied to all Settlement Class Members and can be answered for all Settlement Class Members using common generalized proof since similar disclosures and authorizations were used with all Settlement Class Members throughout the relevant time period. *See, e.g.*, *Noriesta*, 2020 WL 5044418, at *2 (commonality satisfied where "Class Members' claims . . . turn[ed] on the same factual and legal question" of "whether Defendant violated the [FCRA] by using the [background check] form and whether the violation was willful").

Accordingly, Rule 23(a)(2) is satisfied because there are common questions of law or fact common to all Settlement Class Members.

### 3.    Rule 23(a)(3): Typicality Requirement

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class[.]" Typicality "focuses on 'the nature of the claim . . . of the class representative, and not . . . the specific facts from which it arose.'" *See Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1033 (9th Cir. 2020) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011)). Under Rule 23(a)(3)'s "permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted).

Here, Plaintiffs allege injuries that are coextensive with those Settlement Class Members. Namely, that Plaintiffs were deprived of a meaningful opportunity to consent to having their consumer report and/or investigative consumer report procured or caused to be procured. Plaintiffs, like the other Settlement Class Members, were prospective employees and job applicants for whom Defendants procured consumer and/or investigative consumer reports after the Plaintiffs received what they allege are non-compliant disclosures and authorizations under the FCRA. Such claims are based on alleged

conduct by Defendants that is not unique to Plaintiffs, but that applies to all Settlement Class Members equally. *See, e.g.*, *Noriesta*, 2020 WL 5044418, at *3 (typicality satisfied where "each Class Member's claim arises f[rom] the same underlying conduct: Defendant's alleged failure to use a lawful disclosure form"). As such, Plaintiffs' claims are based on the same legal theories as Settlement Class Members' claims. *See id.*

Accordingly, Rule 23(a)(3) is satisfied because Plaintiffs' claims are typical of the claims of the Settlement Class Members.

4. <u>Rule 23(a)(4): Adequacy of Representation Requirement</u>

Rule 23(a)(4) requires "the representative parties [to] fairly and adequately protect the interests of the class." The adequacy factor asks "whether the proposed class representative and her counsel have any conflicts of interest with any class member and whether the proposed class representative and her counsel will prosecute the action vigorously on behalf of the class." *See Noriesta*, 2020 WL 5044418, at *3.

For the same reasons as discussed in Section III.A, *supra*, the Class Representatives share the same interest with Settlement Class Members in recovering damages for the alleged FCRA violation and lack any interests antagonistic to the Settlement Class they seek to represent. Additionally, Class Counsel has, and will continue to, diligently and vigorously prosecute this action on behalf of the Settlement Class. Class Counsel's adequacy is further illustrated by their considerable experience in litigating employment class actions. *See* Lukasiewicz Aff., at ¶¶ 52-59.

Accordingly, Rule 23(a)(4) is satisfied because the representative parties are able to fairly and adequately protect the interests of the Settlement Class Members.

5. <u>Rule 23(b)(3): Predominance Requirement</u>

In addition to satisfying the Rule 23(a) requirements, Plaintiffs also satisfy the predominance and superiority factors of Rule 23(b)(3). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Quiruz*, 2020 WL 6562334, at *5

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:20-CV-07541-MMC

(quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

Here, the core questions relate to whether Defendants procured or caused to be procured consumer and/or investigative consumer reports regarding Settlement Class Members without providing legally compliant disclosures and authorizations to Settlement Class Members as required under the FCRA. As such, these common questions of law or fact will predominate over any questions affecting only individual Settlement Class Members and will drive the resolution of this litigation for all Settlement Class Members. *See, e.g.*, *Noriesta*, 2020 WL 5044418, at *3 (finding predominance satisfied in FCRA action "because the claims of both Plaintiff and the proposed classes stem from Defendant's use of a specific background check form"); *Quiruz*, 2020 WL 6562334, at *5 (predominance satisfied in FCRA action where "common questions regarding Defendants' . . . credit reporting requirements predominate[d]").

Accordingly, Rule 23(b)(3)'s predominance requirement is satisfied.

### 6.    Rule 23(b)(3): Superiority Requirement

Additionally, Rule 23(b)(3)'s superiority requires "a class action [to be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) provides factors for a court to consider in assessing superiority, including: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; and (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum. *See* Fed. R. Civ. P. 23(b)(3)(A)-(C). Notably, as is the situation here, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[.]" *See Amchem Prods., Inc.*, 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).

Here, resolution of all Settlement Class Members' claims through a single class action is superior to numerous individual lawsuits seeking the same relief. This is particularly true where, as is the case here, "many class members lack the resources to shoulder the burden and expense necessary to prosecute their claims [because] . . . the penalties available [for willful FCRA violations] range from $100 to $1,000." *See Noriesta*, 2020 WL 5044418, at *4. For the same reasons, there is no indication that Settlement Class Members seek to individually control their cases given that the commencement of an

individual action against Defendants is cost-prohibitive because the litigation costs will likely far outweigh the potential individual recovery. Nor are the parties aware of any other litigation against Defendants concerning this controversy already commenced by any Settlement Class Member. Finally, there is no indication that this forum is undesirable to adjudicate Settlement Class Members' claims. In fact, this forum is particularly desirable given the related actions against Defendants that are already pending in this Court.

Accordingly, Rule 23(b)(3)'s superiority requirement is satisfied, and this Court should certify the Settlement Class for purposes of settlement.

## V.    THIS COURT SHOULD APPROVE THE SETTLEMENT NOTICE MATERIALS

This Court should similarly approve the Settlement Notice materials that the parties have proposed be directed to the Settlement Class Members. The parties agreed to provide individual notice to Class Members by both email (for all Class Members who have an available email address) and U.S. mail (for Class Members who do not have a working email address).  **Exhibit A**, at ¶ 43(b). For each mailed notice that is returned as undeliverable, the Claims Administrator will use the National Change of Address database to update the mailing address for the intended Settlement Class Member.  *Id.* at ¶ 43(h). The Notice also informs Class Members of a toll-free telephone number and website that the Claims Administrator will set up to answer Class Member questions. *Id.* at ¶ 43(b).  The website will inform Settlement Class Members of the terms of this Settlement Agreement, their rights, dates and deadlines, and shall include the Notice and key documents in the case (including the complaint and settlement agreement). *Id.* at ¶ 43(c).

Plaintiffs respectfully request that the Court approve this notice plan as the best practicable under the circumstances.  Further, the Settlement Notice complies with Rule 23(c)(2)(B)(i)-(vii), in that it "clearly and concisely state[s] in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that [the] class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on [Class] members under Rule 23(c)(3)." *See* SA, **Exhibits A**, **B**.

Accordingly, the parties' proposed Settlement Notice and notice plan should be approved.

1

## VI.   THIS COURT SHOULD SET A DATE FOR A FINAL APPROVAL HEARING

2

3

4

The following schedule sets forth the agreed-upon sequence of the relevant dates and deadlines (as further set forth in the Settlement Agreement), assuming the Court preliminarily approves the Settlement.

5

6

7

8

9

10

11

12

13

14

15

16

17

| | |
|---|---|
| Defendants shall provide to the Claims Administrator a list of Settlement Class Members and contact information. | Within seven (7) calendar days after entry of the preliminary approval order. |
| Settlement Administrator to disseminate a postcard containing the Summary Notice to each Settlement Class Member. | Within three (3) business days of any email returned as an undeliverable message. |
| Settlement Administrator to email the Summary Notice to each Settlement Class Member. | Within fifteen (15) days after entry of the preliminary approval order. |
| Deadline for Settlement Class Members to submit their claims, opt-out or object to the proposed Settlement. | Forty-five (45) days after the initial emailing of the Summary Notice by the Claims Administrator. |
| Plaintiffs to file motion for final settlement approval and request for class counsel's fees and costs, and service awards; Defendants to file Motion for Consent Order. | Thirty-five (35) days in advance of the Final Fairness Hearing. |
| Final Fairness Hearing. | At least 90 days after entry of preliminary approval order (or date thereafter convenient to the Court) as required by CAFA |

18

## CONCLUSION

19

20

21

22

23

24

For the reasons stated herein, this Court should grant this motion in its entirety and the parties respectfully request an order: (1) preliminarily approving the Settlement Agreement as fair, reasonable, and adequate; (2) certifying the Settlement Class for settlement purposes; (3) approving the parties' Settlement Notice to be sent to Settlement Class Members in accordance with the notice plan set forth in the Settlement Agreement; and (4) setting a hearing date for the final fairness hearing and settlement approval.

25

26

27

28

1   DATED: December 30, 2020                    Respectfully submitted,

2                                               By:____/s Jessica L. Lukasiewicz_____

3                                               **THOMAS & SOLOMON LLP**
                                                Jessica L. Lukasiewicz (admitted *pro hac vice*)
4                                               Jonathan W. Ferris (admitted *pro hac vice*)
                                                693 East Avenue
5                                               Rochester, NY 14607
                                                Telephone: 585-272-0540
6                                               jlukasiewicz@theemploymentattorneys.com
                                                jferris@theemploymentattorneys.com
7

8                                               Adam B. Wolf (Bar No. 215914)
9                                               **PEIFFER WOLF CARR KANE & CONWAY,**
                                                **A PROFESSIONAL LAW CORPORATION**
10                                              4 Embarcadero Center, Suite 1400
                                                San Francisco, CA 94111
11                                              awolf@peifferwolf.com
                                                (415) 766-3545
12

13

14                                              *Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:20-CV-07541-MMC