Jessica L. Lukasiewicz (admitted *pro hac vice*)
Jonathan W. Ferris (admitted *pro hac vice*)
**THOMAS & SOLOMON LLP**
693 East Avenue
Rochester, NY 14607
Telephone: 585-272-0540
jlukasiewicz@theemploymentattorneys.com
jferris@theemploymentattorneys.com
(585) 272-0540

Adam B. Wolf (Bar No. 215914)
**PEIFFER WOLF CARR KANE & CONWAY,**
**A PROFESSIONAL LAW CORPORATION**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
awolf@peifferwolf.com
(415) 766-3545

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACI HUTTO and JENNIFER MELNYK, *individually and as representatives of the class*, <br><br> Plaintiffs, <br><br> v. <br><br> ALBERTSONS COMPANIES, INC., ALBERTSON'S LLC, ALBERTSONS COMPANIES, LLC, NEW ALBERTSONS, L.P., ALBERTSONS STORES SUB HOLDINGS, LLC, AB ACQUISITION LLC, AB MANAGEMENT SERVICES CORP., AMERICAN FOOD AND DRUG LLC, INK HOLDINGS, LLC, and ALBERTSON'S HOLDINGS LLC, <br><br> Defendants. | Case No. 3:20-cv-07541-MMC <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS** <br><br> **Date:** June 11, 2021 <br> **Time:** 9:00 a.m. <br> **Courtroom:** 7, 19th Floor <br> **Judge:** Hon. Maxine M. Chesney |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

NOTICE OF MOTION ............................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

INTRODUCTION ...................................................................................................................... 1

I.      FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 2

    A.    The Albertsons Action ............................................................................................ 2

    B.    The Safeway and Vons Actions ............................................................................... 4

    C.    Settlement of the Safeway, Vons, and Albertsons Actions ..................................... 4

    D.    Plaintiffs' counsel Expended Over 450 Hours Litigating This Case ....................... 5

    E.    Ms. Hutto's and Ms. Melnyk's Contributions as Class Representatives ................. 6

ARGUMENT ............................................................................................................................. 6

II.    THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES. ............. 6

    A.    The Court should award attorneys' fees from the percentage-of-the-fund method. .... 7

    B.    The Court should approve the request of the benchmark 25% in attorneys' fees. ........ 7

        1.    The results achieved .......................................................................................... 9

        2.    The risk of litigation ........................................................................................ 11

        3.    The skill required and quality of work ............................................................. 13

        4.    The contingent nature of the fee ...................................................................... 13

        5.    Awards made in similar cases ........................................................................... 14

    C.    The Requested Award for Attorneys' Fees is Reasonable Under the Lodestar Method ............ 15

        1.    Plaintiffs' counsel's number of hours expended in this litigation ..................... 15

        2.    Plaintiffs' counsel's reasonable hourly rates ................................................... 15

        3.    Plaintiffs' counsel's lodestar calculation .......................................................... 16

        4.    Plaintiffs' counsel's requested multiplier is reasonable ................................... 17

III.   PLAINTIFFS' COUNSEL'S REQUEST FOR REIMBURSEMENT OF OUT-OF-POCKET COSTS IS REASONABLE ........................................................................................... 20

IV.   THE REQUESTED SERVICE AWARDS FOR CLASS REPRESENATIVES ARE APPROPRIATE .............................................................................................................. 21

    A.    The Risk to Class Representatives in Commencing the Suit ................................... 22

    B.    The Notoriety and Personal Difficulties Encountered by the Class Representatives ........ 22

    C.    The Amount of Time and Effort Spent by the Class Representatives ..................... 23

i

D.   The Duration of the Litigation ................................................................................23

E.   The Personal Benefit (or lack thereof) Enjoyed by the Class Representatives ...........................24

CONCLUSION.....................................................................................................................24

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
CASE NO. 3:20-CV-07541-MMC

# TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Bauer's Intelligent Transportation, Inc.*, No. 13-cv-2691, 2015 WL 12830458 (N.D. Cal. Sept. 21, 2015) ............................................................................................................................................ 8

*Ashby v. Farmers Ins. Co. of Or.*, 592 F. Supp. 2d 1307 (D. Or. 2008) ........................................................ 9

*Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) 14

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) .......................................................................................... 7

*Bravo v. Gale Triangle, Inc.*, No. 16-cv-3347, 2017 WL 708766 (C.D. Cal. Feb. 16, 2017) ................. 22

*Burnthorne-Martinez v. Sephora USA, Inc.*, No. 16-cv-2843, 2018 WL 5310833 (N.D. Cal. May 16, 2018) ............................................................................................................................................. 8, 14

*Carter v. XPO Logistics, Inc.*, No. 16-cv-1231, 2019 WL 5295125 (N.D. Cal. Oct. 18, 2019) ............. 18

*Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) ........................................ 15, 17

*Der-Hacopian v. DarkTrace, Inc.*, No. 18-cv-6726, 2020 WL 7260054 (N.D. Cal. Dec. 10, 2020) ....... 15

*Ellison v. Steven Madden, Ltd.*, No. 11-cv-5935, 2013 WL 12124432 (C.D. Cal. May 7, 2013) ............. 7

*Esomonu v. Omnicare Inc.,* No. 4:15-CV-02003-HSG, 2019 WL 499750 (N.D. Cal. Feb. 8, 2019) 10, 14, 16

*Etter v. Allstate Ins. Co.*, No. 17-cv-184, 2018 WL 5791883 (N.D. Cal. Nov. 4, 2018) ......................... 17

*Feist v. Petco Animal Supplies, Inc.*, No. 16-cv-1369, 2018 WL 6040801 (S.D. Cal. Nov. 16, 2018) 8, 10, 14

*Ford v. CEC Ent. Inc.*, No. 14-cv-677, 2015 WL 11439033 (S.D. Cal. Dec. 14, 2015) ......................... 14

*Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019) ........................................... 12

*Glass v. UBS Fin. Servs., Inc.*, No. 06-cv-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ................ 8

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ........................................................................................ 20

*Holman v. Experian Info. Sols., Inc.*, No. 11-cv-180, 2014 WL 7186207 (N.D. Cal. Dec. 12, 2014) ..... 21

*Hopkins v. Stryker Sales Corp.*, No. 11-cv-2786, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ............... 17

*In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935 (9th Cir. 2011) ......................... 1, 8, 15, 18

*In re High-Tech Employee Antitrust Litig.*, No. 11-cv-2509, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) .................................................................................................................................................... 1, 8

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................... 7, 9, 20

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) .................................................. 8

*In re Sorbates Direct Purchaser Antitrust Litig.*, No. 98-cv-4886, 2002 WL 31655191 (N.D. Cal. Nov. 15, 2002) ................................................................................................................................................. 8

*In re Uber FCRA Litig.*, No. 14-cv-5200, 2018 WL 2047362, at *6 (N.D. Cal. May 2, 2018) .......... 8, 14

*In re Uber FCRA Litigation*, No. 14-CV-05200-EMC, 2017 WL 2806698 (N.D. Cal. Jun. 29, 2017) ... 10

*In re Veritas Software Corp. Securities Litig.*, No. 03-cv-283, 2005 WL 3096079 (N.D. Cal. Nov. 15, 2005) ................................................................................................................................................... 17

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ................................. passim

*In re Wells Fargo Collateral Protection Ins. Litig.*, No. 17-cv-2797, 2019 WL 6219875 (C.D. Cal. Nov. 4, 2019) ................................................................................................................................................ 17

*Kutzman v. Derrel's Mini Storage, Inc.*, No. 18-cv-755, 2020 WL 5909151 (E.D. Cal. Oct. 6, 2020) ... 17

*Lazarin v. Pro Unlimited, Inc.*, No. 11-cv-3609, 2013 WL 3541217 (N.D. Cal. July 11, 2013) ............. 17

*McLeod v. Bank of Am., N.A.*, No. 16-cv-3294, 2019 WL 1170487 (N.D. Cal. Mar. 13, 2019) ............. 17

*McNeal v. RCM Techs. (USA), Inc.*, No. 16-cv-5170, 2017 WL 2974918 (C.D. Cal. July 12, 2017) ..... 22

*Moore v. Aerotek, Inc.*, No. 2:15-CV-2701, 2017 WL 2838148 (S.D. Ohio Jun. 30, 2017) .................... 10

iii

*Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. 19-cv-620, 2020 WL 5044418 (C.D. Cal. May 7, 2020) ............................................................................................................................................... 11

*Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. 19-cv-620, Dkt. No. 52 (C.D. Cal. Oct. 22, 2020) ................................................................................................................................................. 21

*Patton v. Church & Dwight Co.*, No. 18-cv-903, 2019 WL 6357266 (C.D. Cal. Aug. 6, 2019) ... 8, 14, 20

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ...................................... 8

*Quiruz v. Specialty Commodities, Inc.*, No. 17-cv-3300, 2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) .. 8, 14, 18

*Razilov v. Nationwide Mutual Ins. Co.*, No. 01-cv-1466, 2006 WL 3312024 (D. Or. Nov. 13, 2006) .... 14

*Reyes v. Experian Info. Sols., Inc.*, No. 16-cv-563, 2020 WL 5172713 (C.D. Cal. July 30, 2020)...... 21

*Rhom v. Thumbtack, Inc.*, No. 16-cv-2008, 2017 WL 4642409 (N.D. Cal. Oct. 17, 2017) .............. 14, 20

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ....................................................... 21

*Safeco v. Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ............................................................... 12

*Salgado v. T-Mobile USA, Inc.*, No. 17-cv-339, 2020 WL 3127931 (E.D. Cal. June 12, 2020)............. 17

*Santos v. Jacob Oil Co.*, No. 14-cv-738, 2015 WL 5732829 (E.D. Cal. Sept. 29, 2015).................... 14

*Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-2200, 2020 WL 6484833 (N.D. Cal. Nov. 4, 2020) ................................................................................................................................................. 16

*Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895 (9th Cir. 1995) .................................. 15

*Singh v. Roadrunner Intermodal Servs., LLC*, No. 15-cv-1497, 2019 WL 316814 (E.D. Cal. Jan. 24, 2019) ............................................................................................................................................... 18

*Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990)........................... 1, 8

*Smith v. Experian Info. Sols., Inc.*, No. 17-cv-629, 2020 WL 6689209 (C.D. Cal. Nov. 9, 2020) 8, 14, 17, 21

*Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016)........................................................................... 12

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................................................................ 7, 8

*Steiner v. Am. Broadcasting Co.*, 248 F. App'x 780 (9th Cir. 2007)............................................. 17

*Syed v. M-I LLC*, No. 14-cv-742, 2016 WL 310135 (E.D. Cal. Jan. 26, 2016)............................... 20

*Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017)...................................................................... 12

*Syed v. M-I, LLC*, No. 12-cv-1718, 2017 WL 3190341 (E.D. Cal. July 27, 2017) ...................... 21

*Taylor v. FedEx Freight, Inc.*, No. 13-cv-1137, 2016 WL 6038949 (E.D. Cal. Oct. 13, 2016)............. 18

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. Aug. 16, 1995)............................ 17, 22

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)..................................................... 7, 17

*Walker v. Fred Meyer, Inc.*, 953 F.3d 1082 (9th Cir. 2020) ..................................................... 12, 18

*Watkins v. Hireright, Inc.*, No. 13-cv-1432, Dkt. No. 153, at 8 (S.D. Cal. Sept. 30, 2016) .................... 21

**Statutes**

15 U.S.C. § 1681b(b)(2)(A)(i) .......................................................................................................... 2

15 U.S.C. § 1681n(a)(1) ................................................................................................................. 9

**Other Authorities**

Fed. Trade Comm'm, Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns (Sept. 2019), https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf. ................................. 9

iv

**Rules**

Fed. R. Civ. P. 23(h) .................................................................................................................... 20

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
CASE NO. 3:20-CV-07541-MMC

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE THAT** on June 11, 2021, at 9:00 a.m., or as soon thereafter as the matter may be heard in the United States District Court for the Northern District of California, located at the San Francisco Courthouse, Courtroom 7, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102 before the Honorable Maxine M. Chesney, Plaintiffs Jaci Hutto and Jennifer Melnyk, on behalf of themselves and the conditionally certified Class, will and hereby move this Court for an Order granting an award of attorneys' fees, costs, and service awards. This Motion is based on this Notice of Motion and Memorandum of Points and Authorities set forth herein, as well as the declaration and supporting exhibits filed herewith, and the previous proceedings and record in this matter.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the requested award for attorneys' fees and costs to Plaintiffs' counsel is reasonable.

2. Whether the requested service awards to each Plaintiff are reasonable.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiffs Jaci Hutto and Jennifer Melnyk ("Plaintiffs" or "Class Representatives"), individually and as representatives of the conditionally certified class ("Class" or "Class Members"), respectfully move and request that this Court award Plaintiffs' counsel, Thomas & Solomon LLP, attorneys' fees and costs, and grant service awards for each Class Representative in connection with the Class Action Settlement Agreement ("Settlement") in this action. Plaintiffs' counsel seeks an award of attorneys' fees in the amount of $259,368.53, which is squarely in line with the 25% "benchmark" recognized to be "presumptively reasonable" in common fund settlements within the Ninth Circuit.[1] Plaintiffs' counsel further seeks $6,358.30 in out-of-pocket costs reasonably expended in connection with this litigation,[2] as well as service awards for Plaintiffs Hutto and Melnyk in the amount of $6,000 each in recognition of

---

[1]  *See In re High-Tech Employee Antitrust Litig.*, No. 11-cv-2509, 2015 WL 5158730, at *6 (N.D. Cal. Sept. 2, 2015) (citing *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

[2]  In the unlikely event that significant additional out-of-pocket costs are expended prior to final approval, Plaintiffs' counsel reserves the right to supplement its submission to include such additional costs.

---

1

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
CASE NO. 3:20-CV-07541-MMC

their time and effort spent on this litigation, the inherent risks as serving as named plaintiffs, and for their representation of the conditionally certified Class.

Accordingly, for the reasons set forth herein, this Court should grant Plaintiffs' motion for an award of attorneys' fees, costs, and service awards.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

As previously set forth in Plaintiffs' motion for preliminary approval of class action settlement (*see* Dkt. No. 38, at 2-6), this Settlement is one part of a larger global settlement of four related actions. In short, each of the below actions that make up the global settlement concern whether three affiliated supermarket chains—Albertsons, Safeway, and Vons—unlawfully procured or caused to be procured consumer and investigative consumer reports of job applicants without making legally compliant disclosures and authorizations. *See* Declaration of Jessica L. Lukasiewicz, sworn to on March 5, 2021, at ¶ 3 ("Lukasiewicz Decl."). As also described below, Plaintiffs' counsel expended over 450 hours in this action. Lukasiewicz Decl., at ¶ 41.

### A.  The Albertsons Action

In this instant action, on October 24, 2019, Plaintiffs filed a Class Action Complaint and Demand for Jury Trial ("Complaint") in the District of Idaho against Defendants alleging a violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(2)(A)(i). *See* Dkt. No. 1 ("Albertsons Action"); Lukasiewicz Decl., at ¶ 4. The Albertsons Action Plaintiffs allege that Albertsons procured consumer and investigative consumer reports on employees and job applicants without obtaining legally compliant disclosures and authorizations. *Id.* at ¶ 5.

Prior to filing the complaint on October 24, 2019, Plaintiffs' counsel thoroughly investigated Plaintiffs' claims and expended a significant amount of time and resources to determine the viability of Plaintiffs' claims. *See* Lukasiewicz Decl., at ¶ 6. Plaintiffs' counsel communicated with dozens of Class Members to ascertain their experiences at Albertsons, and whether other Class Members had similar experiences with their background check disclosures, and also conducted significant legal research to navigate numerous unsettled issues in FCRA litigation, including the requirements for standing post-*Spokeo*, the types of extraneous material in a disclosure which has been held to violate the FCRA, and the requirements for establishing a willful violation. *See* Lukasiewicz Decl., at ¶ 7. Plaintiffs' counsel

2

then thoroughly analyzed the factual information provided by Plaintiffs and Class Members, as well as the applicable FCRA caselaw, and then made a decision to take on the case. *See* Lukasiewicz Decl., at ¶ 8.

On January 21, 2020, Defendants filed an Answer to Plaintiffs' Complaint denying the allegations and asserting twenty-six affirmative defenses. *See* Dkt. No. 17; Lukasiewicz Decl., at ¶ 9. Shortly thereafter, on January 30, 2020, the parties filed a stipulation staying the Albertsons Action in the District of Idaho pending a determination of anticipated summary judgment motions in a related case in the Northern District of California, *Sullivan, et al. v. Safeway Inc., et al.*, No. 19-cv-3187 ("Safeway Action"), which would address issues pertinent to the Albertsons Action. *See* Dkt. No. 19. Pursuant to the stipulation, on January 30, 2020, Judge Winmill of the District of Idaho stayed the Albertsons Action pending a decision on the forthcoming motions for summary judgment in the Safeway Action. *See* Dkt. No. 20; Lukasiewicz Decl., at ¶ 10. Plaintiffs' counsel expended significant time in the Safeway Action, addressing the pertinent legal issues necessary to drive the litigation in this, related matter, of which those hours expended in the Safeway Action ultimately served as the catalyst to the resolution of the Albertsons Action. *See* Lukasiewicz Decl., at ¶ 11.

As discussed further below, in October 2020, the Albertsons Action Plaintiffs reached a settlement in principle. *Id.* at ¶¶ 19-20. On October 26, 2020, the parties in the Albertsons Action filed a stipulation with the District of Idaho transferring this action to this Court for the purpose of facilitating the settlement process of all the related actions resolved in the global settlement and to promote efficiency. *See* Dkt. No. 23. On October 27, 2020, Judge Winmill of the District of Idaho transferred the Albertsons Action for settlement purposes only to this Court pursuant to the parties' stipulation. *See* Dkt. No. 24.

Pursuant to this Court's December 21, 2020 Order (*see* Dkt. No. 33), Plaintiffs filed their notice of motion and motion for preliminary approval of class action settlement on December 30, 2020. *See* Dkt. No. 38. This Court held a hearing on the motion for preliminary approval on February 12, 2021 and, at that hearing, ordered Plaintiffs to file a motion for attorneys' fees and costs by March 5, 2021. *See* Dkt. No. 42. On February 19, 2021, following the request for additional submissions, this Court granted Plaintiffs' Motion for Preliminary Approval and set a final fairness hearing for June 11, 2021 at 9:00 a.m.

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
CASE NO. 3:20-CV-07541-MMC

1   *See* Dkt. No. 47.

2       **B.      The Safeway and Vons Actions**

3       Herein, Plaintiffs provide a brief recitation of the factual and procedural history in two related

4   cases—the Safeway Action, and *Drew, et al. v. The Vons Companies, Inc.*, No. 20-cv-347 (C.D. Cal.)

5   and *Gilman v. The Vons Companies, Inc.*, No. 20-cv-681 (C.D. Cal.) ("Vons Actions")—however, a more

6   detailed history is discussed in the motion for preliminary approval filed in the Safeway Action at Dkt.

7   No. 98.

8       The primary claim at issue in the Safeway and Vons Action pertains to Safeway's and Vons'

9   alleged violation of the FCRA by procuring consumer and investigative consumer reports on employees

10  and job applicants without making legally compliant disclosures and authorizations. *See* Safeway Action,

11  Dkt. No. 55; Lukasiewicz Decl., at ¶ 13. Given that the Albertsons and Vons matters involved to the same

12  primary claim against related defendants, the Safeway Action was the lead case driving a resolution of

13  the related Albertsons and Vons actions since the Safeway Action was the earlier-filed matter. *See*

14  Lukasiewicz Decl., at ¶ 14.

15      **C.      Settlement of the Safeway, Vons, and Albertsons Actions**

16      This Settlement is one part of a larger global settlement of four related cases referenced above.

17  The Albertsons Action, Safeway Action, and Vons Actions all center on the same dispute—whether three

18  affiliated supermarket chains—Albertsons, Safeway, and Vons—unlawfully procured or caused to be

19  procured consumer and investigative consumer reports of job applicants without making legally

20  compliant disclosures and authorizations. *See* Lukasiewicz Decl., at ¶ 3. The defendants in the Safeway

21  Action and the Vons Actions, Safeway, Inc. and The Vons Companies, Inc., are subsidiaries of

22  Albertsons Companies, Inc. (the primary defendant in the Albertsons Action). *See* Dkt. No. 19, at 2;

23  *Drew*, No. 20-347, Dkt. No. 34, at 5. Safeway, Vons, and Albertsons all used nearly identical (if not

24  identical) disclosure and authorization forms. The defendants in each of the above-referenced actions are

25  represented by the same defense counsel. *See id.* at ¶ 15.

26      On June 3, 2020, the parties in the Safeway and Vons Actions participated in an all-day mediation

27  session with the Honorable Ronald Sabraw (Ret.). *See id.* at ¶ 16. Following the mediation, the parties in

28  the Safeway and Vons Actions continued to engage in settlement discussions facilitated through the

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
CASE NO. 3:20-CV-07541-MMC

continued use of Judge Sabraw, which resulted in a settlement of both the Safeway and Vons Actions. *See* Lukasiewicz Decl., at ¶ 17. The parties in the Safeway and Vons Actions were ultimately able to reach an agreement in principle to resolve the cases. *Id.*, at ¶ 18.

As the Albertsons Action similarly involved the same central question about the requisite disclosure document, similar underlying disclosure documents, and had defendants related to those in the Safeway and Vons Actions, after exchanging the necessary documentation, the parties in the Albertsons Action used the constructs of the settlement in the Safeway and Vons Actions, to similarly reach a resolution, thus leading to a global resolution of all four actions. *See id.* at ¶ 19. On October 19, 2020, the parties in the Albertsons Action signed a Memorandum of Understanding ("MOU") having reached a settlement in principle. *See* Lukasiewicz Decl., at ¶ 20. The settlement in the Safeway and Vons Actions is also contingent upon approval of the Settlement in the Albertsons Action. *See id.* at ¶ 21. The Albertsons Action and Settlement, however, are separate from the Safeway and Vons Actions and settlement. *Id.*, at ¶ 22.

The Settlement Agreement in the Albertsons Action creates a Gross Settlement Sum of One Million Thirty-Seven Thousand Four Hundred Seventy-Four Dollars and Ten Cents ($1,037,474.10). The Settlement Agreement also provides service awards in the sum of Six-Thousand Dollars and Zero Cents ($6,000) for each proposed Class Representative. *See* Dkt. No. 38-2, at ¶ 15.

### D.    Plaintiffs' Counsel Expended Over 450 Hours Litigating This Case

To date, Plaintiffs' counsel has expended 461.1 hours prosecuting this case to date. *See* Lukasiewicz Aff., at ¶ 41. Using Plaintiffs' counsel's hourly rates, this results in a total lodestar of $205,988.50. *Id.*, at ¶ 45. This includes time spent investigating Plaintiffs' claims, communicating with dozens of Class Members, drafting the Complaint, conducting legal research on the pertinent unsettled legal issues involved in the case, participating in settlement negotiations, and preparing and filing the requisite settlement approval documents. *See* Lukasiewicz Decl., at ¶ 41. These hours were broken down by attorney and paralegal time as illustrated in the chart within the Lukasiewicz Decl., at ¶ 45. Notably, these hours do not reflect all of the time that Plaintiffs' counsel will continue to spend on the Settlement of this action, including preparation of this motion, preparation of the Settlement website and other administrative issues, and handling telephone calls and inquiries from Class Members. *See id.*  at ¶ 42.

Nor does it include tens of hours of time that Plaintiffs' counsel has voluntarily excluded through its use of billing judgment discretion. *See id.*

### E.   Ms. Hutto's and Ms. Melnyk's Contributions as Class Representatives

Plaintiffs Hutto and Melnyk were instrumental to the initiation and prosecution of this action. *See* Lukasiewicz Decl., at ¶ 50. Each Plaintiff expended considerable time and effort since the inception of this action, as well as assumed considerable risk in participating as a named plaintiff in an employment class action. *See generally* Declaration of Jaci Hutto, sworn to on March 3, 2021 ("Hutto Decl.," **Exhibit A** to Lukasiewicz Decl."); Declaration of Jennifer Melnyk, sworn to on March 3, 2021 ("Melnyk Decl.," **Exhibit B** to Lukasiewicz Decl.). For example, each Plaintiff assisted in the investigation of this lawsuit by requesting their personnel files, provided factual information to their counsel for the complaint, and reviewed the complaint prior to filing. *See* Hutto Decl., at ¶¶ 7-8; Melnyk Decl., at ¶¶ 7-8. As Class Representatives, each Plaintiff participated actively in the lawsuit, including by frequently communicating with their counsel regarding legal theories of the case, sources of evidence, their experiences, and case status. *See* Hutto Decl., at ¶ 9; Melnyk Decl., at ¶ 9. Following the Settlement in this action, each Plaintiff participated in multiple phone calls with their counsel to discuss the terms of the Settlement, including reviewing the Settlement documents and traveling to a mail carrier to return executed Settlement documents. *See* Hutto Decl., at ¶ 10; Melnyk Decl., at ¶ 10. Plaintiffs Hutto and Melnyk assumed considerable risk of retaliation in the industry and diminished future employment opportunities by having their names associated with this lawsuit as named plaintiffs. *See* Hutto Decl., at ¶¶ 4-6, 13; Melnyk Decl., at ¶ 4-6, 13. Plaintiffs adequately represented the Class and assumed such risks without any assurance that they would ever receive any monetary compensation from this lawsuit. *See* Hutto Decl., at ¶ 4, 11-12; Melnyk Decl., at ¶ 4, 11-12.

## ARGUMENT

## II.   THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES.

Plaintiffs' counsel respectfully requests an award of reasonable attorneys' fees in the amount of $259,368.52 and an award of their out-of-pocket costs in the amount of $6,358.30.  As set forth below, Plaintiffs' counsel's requested fee award is reasonable under both methods used by the Ninth Circuit

when determining fees in class actions, either the percentage-of-the-fund which is consistent with this Circuit's benchmark fee and lodestar requiring only a small multiplier of less than 2.[3]

**A.**      **The Court should award attorneys' fees from the percentage-of-the-fund method.**

Among district courts in the Ninth Circuit, the "use of the percentage method in common fund cases appears to be dominant." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (collecting Ninth Circuit and Northern District of California cases). *See also Ellison v. Steven Madden, Ltd.*, No. 11-cv-5935, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (same). The percentage-of-the-fund approach is particularly appropriate in cases where, as here, "each member of a certified Class has an undisputed and mathematically ascertainable claim to part of a lump-sum [] recovered on his behalf." *See Staton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980)).

Here, the percentage-of-the-fund method is appropriate because Plaintiffs' counsel secured a settlement with a fund of $1,037,474.10, which will be shared by over 68,000 individuals, and it is appropriate for attorneys' fees to likewise be shared among this group. The Settlement Agreement provides a *pro rata* distribution to Class Members who submit a timely, valid claim form. *See* Dkt. No. 38-2, at 8. The percentage-of-the-fund method is particularly appropriate in class action litigation where many class members ultimately benefit from the settlement, but most may not have played a significant role in the litigation that led to the payment. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). As such, the percentage approach "allows a court to prevent [] inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.* (citation omitted).

**B.**      **The Court should approve the request of the benchmark 25% in attorneys' fees.**

The Ninth Circuit has emphasized that 25% of the common fund is the "benchmark" award recognized to be "presumptively reasonable" in common fund settlements within the Ninth Circuit. *See*

---

[3]      While the Ninth Circuit has articulated that a "district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" to determine an attorneys' fees award, as set forth in Section II(A), (B), *infra*, the vast majority of courts apply the percentage-of-the fund method. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir. 1994)).

*In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *6 (citing *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d at 942; *Six Mexican Workers*, 904 F.2d at 1311); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015); *Staton*, 327 F.3d at 968; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 273 (9th Cir. 1989). *See also Armstrong v. Bauer's Intelligent Transportation, Inc.*, No. 13-cv-2691, 2015 WL 12830458, at *2 (N.D. Cal. Sept. 21, 2015) (awarding 25% of the common fund in attorneys' fees) (Chesney, J.); *Glass v. UBS Fin. Servs., Inc.*, No. 06-cv-4068, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) (awarding 25% of the common fund in attorneys' fees) (Chesney, J.); *In re Sorbates Direct Purchaser Antitrust Litig.*, No. 98-cv-4886, 2002 WL 31655191, at *3 (N.D. Cal. Nov. 15, 2002) (awarding 25% of the common fund in attorneys' fees) (Chesney, J.).

Further, consistent with this prevailing view, district courts within this Circuit routinely apply the percentage-of-the-fund method to award attorneys' fees in FCRA settlements, often above and beyond the benchmark award of 25%. *Burnthorne-Martinez v. Sephora USA, Inc.*, No. 16-cv-2843, 2018 WL 5310833, at *2–3 (N.D. Cal. May 16, 2018) (applying percentage-of-the-fund method in FCRA settlement and approving fee award of 33%); *Quiruz v. Specialty Commodities, Inc.*, No. 17-cv-3300, 2020 WL 6562334, at *10 (N.D. Cal. Nov. 9, 2020) (applying percentage-of-the-fund method in FCRA settlement and approving fee award of 31% of the gross settlement fund).[4]

The reasonableness of the percentage applied by the district court under this method, and any departure from the 25% benchmark, which is not sought here, is assessed through several factors, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048–50.  Here, although Plaintiffs' counsel does not seek a

---

[4]   *See also Patton v. Church & Dwight Co.*, No. 18-cv-903, 2019 WL 6357266, at *5 (C.D. Cal. Aug. 6, 2019) (applying percentage-of-the-fund method in FCRA settlement and approving fee award of 25%); *In re Uber FCRA Litig.*, No. 14-cv-5200, 2018 WL 2047362, at *6 (N.D. Cal. May 2, 2018) (applying percentage-of-the-fund method in FCRA settlement and approving fee award of 25%); *Smith v. Experian Info. Sols., Inc.*, No. 17-cv-629, 2020 WL 6689209, at *5–7 (C.D. Cal. Nov. 9, 2020) (applying percentage-of-the-fund method in FCRA settlement and approving fee award of 25% of the gross settlement fund); *Feist v. Petco Animal Supplies, Inc.*, No. 16-cv-1369, 2018 WL 6040801, at *7 (S.D. Cal. Nov. 16, 2018) (applying percentage-of-the-fund method in FCRA settlement and approving fee award of 25% of the gross settlement fund).

8

departure from the 25% benchmark, and this Court need not consider the factors, the reasonableness of the requested attorneys' fee award is further established by the various factors identified by the Ninth Circuit.

### 1. The results achieved

The excellent results achieved on behalf of the Class weighs in favor of the reasonableness of the requested attorneys' fee award of 25% of the Gross Settlement Fund. The overall result and benefit to the class is often viewed as "the most critical factor in granting a fee award." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1046.

The $1,037,474.10 Gross Settlement Sum obtained by Plaintiffs' counsel is significant for a matter brought under the FCRA, and the Settlement provides for an immediate payment to those Class Members that timely submit a valid claim form. *See* Dkt. No. 38-2, at 8.

The FCRA provides for statutory damages from $100 to $1,000 for "willful" violations. *See* 15 U.S.C. § 1681n(a)(1). Courts have concluded that the most important factor in assessing the amount of statutory damages under the FCRA "is the jury's perception of the importance . . . of the rights and protections conferred on the consuming public by FCRA's [] notice requirements." *Ashby v. Farmers Ins. Co. of Or.*, 592 F. Supp. 2d 1307 (D. Or. 2008). Although Plaintiffs consider the right to meaningful disclosure protected by FCRA to be important, they acknowledge that this case does not involve the kind of conduct likely to inflame the passion of a jury and liability would not be certain. Plaintiffs thus anticipate that—assuming liability were found—damages at trial may be toward the low end of the potential range of recovery (i.e., approximately $6.8 million [68,181 Class Members x $100 each]). *See* Dkt. No. 38, at 7-8.

Further, here, as discussed in Plaintiffs' motion for preliminary approval, Plaintiffs' counsel estimates that 10% of Class Members will file claim forms, based on comparable claims-made FCRA settlements administered in the past four years by the Claims Administrator.[5] *See* Dkt. No. 38-1, at ¶ 42. For example, Plaintiffs' counsel filed charts in connection with Plaintiffs' motion for preliminary

---

[5] In a 2019 study, the Federal Trade Commission found that "[a]cross all cases . . . requiring a claims process, the median calculated claims rate was 9%." *Available at*, https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf.

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
CASE NO. 3:20-CV-07541-MMC

approval illustrating analogous claims-made settlements involving FCRA administered by the Claims Administrator in this action over the past four years. *See* Dkt. No. 38-4. When applying the 10% average claim form return rate in those comparable actions to the total Class here of 68,181 Class Members, 6,818 Class Members are anticipated to return their claim forms in this Settlement. Considering the 6,818 Class Members and the estimated Net Settlement Fund of $708,105.57 ($1,037,474.10 (Gross Settlement Fund) – $259,368.53 (25% in requested attorneys' fees) - $12,000 (proposed service awards to Plaintiffs) - $58,000 (estimated maximum settlement administration costs)), the estimated recovery for class members who submit a timely claim form is $103.86, which exceeds the low end of statutory damages provided under the FCRA. As such, the Settlement provides an excellent recovery for the Class when considering the total prospective damages available to each Class Member.

In fact, FCRA class settlements for disclosure type violations are typically settled in the range of $5 to $25 per person, including in a claims-made structure. *See, e.g., Esomonu v. Omnicare Inc.,* No. 4:15-CV-02003-HSG, 2019 WL 499750, at *4 (N.D. Cal. Feb. 8, 2019) (granting final approval to settlement of $17 per class member net); *Feist*, 2018 WL 6040801, at *2 (granting final settlement approval of FCRA class action related to inadequate disclosure prior to procuring a consumer report for employment purposes where members of the Disclosure Class would receive approximately $20 each); *Moore v. Aerotek, Inc*., No. 2:15-CV-2701, 2017 WL 2838148, at *4 (S.D. Ohio Jun. 30, 2017) (per class member payments of between $13 and $80); *In re Uber FCRA Litigation*, No. 14-CV-05200-EMC, 2017 WL 2806698, at *2 (N.D. Cal. Jun. 29, 2017) (granting preliminary approval of claims-made FCRA settlement with estimated payment of $18 per claimant at 15% claim rate). *See also* Declaration of Jessica Lukasiewicz, sworn to on December 30, 2020, Dkt. No. 38-1, at ¶ 43 (collecting cases).

Because the Net Settlement amount is divided *pro rata* among Class Members who file valid claims, the Gross Settlement Sum is not affected by the number of Class Members who file claims. *See* Dkt. No 38-2, at 16. If, for example, 25% of Class Members file claim forms, Plaintiffs' Counsel estimates that they will receive a net payment of $41.54, and even if all 68,181 Class Members file claims forms, Plaintiffs' Counsel estimates that they will receive a net settlement payment of over $10. *See* Dkt.

No. 38-1, at ¶ 44. Thus, the Settlement obtained by Plaintiffs' counsel is well in line with settlement values in other, comparable FCRA actions.[6]

Accordingly, the excellent results achieved on behalf of the Class weighs in favor of the reasonableness of the requested attorneys' fee award of 25% of the Gross Settlement Fund.

### 2.   The risk of litigation

The risk of litigation also weighs in favor of the reasonableness of the requested attorneys' fee award of 25% of the Gross Settlement Fund. Without a settlement, this case would be complex, expensive, and any relief obtained on behalf of the Settlement Class would be many years removed. For example, assuming no settlement had been reached, the parties would continue with significant class and merits discovery. This would necessarily involve significant motion practice concerning class certification and summary judgment, as well as potential motion to dismiss briefing. *See Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. 19-cv-620, 2020 WL 5044418, at *7 (C.D. Cal. May 7, 2020) (acknowledging in FCRA action that "[w]ithout the Settlement Agreement, the parties would be required to litigate class certification, as well as the ultimate merits of the case—a process which . . . is long and expensive"). Even after such motion practice, and regardless of who prevailed at trial, appeals would likely have been filed. Thus, the ultimate resolution of Plaintiffs' and Class Members' claims would be a long, arduous process requiring significant expenditures of time and money on behalf of both parties and the Court. Any such monetary relief for Plaintiffs and Class Members, if any, would be many years removed.

While Plaintiffs believe that they would have been able to demonstrate that Defendants violated the FCRA's "standalone disclosure" requirement, that this action is appropriate for class certification, and that they would succeed on the merits of their claims, Defendants would vigorously defend against any wrongdoing and pursue their twenty-six affirmative defenses. *See* Dkt. No. 17. For example, Defendants have vigorously contested numerous unsettled issues in FCRA litigation, including standing and statutory damages based on a willful violation.

Additionally, Plaintiffs believe that they would succeed on the merits because the disclosures

---

[6]     Additionally, Defendants would likely argue that the recent Ninth Circuit decisions providing further guidance on and clarification of the FCRA would have an arguable impact on the settlement value of current cases.

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
CASE NO. 3:20-CV-07541-MMC

Defendants used did not consist "solely" of the disclosure as made clear in recent Ninth Circuit decisions. *See, e.g.*, *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082 (9th Cir. 2020); *Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019); *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017). Nonetheless, Defendants had colorable arguments that their disclosure was compliant. *See, e.g.*, *Walker*, 953 F.3d at 1089 (holding a mention of investigative consumer reports in addition to consumer reports in the same disclosure does not violate the FCRA's stand-alone disclosure requirement). Without a settlement, Defendants would have argued that any extraneous language in the disclosure documents provided to candidates was not a willful violation of the FCRA, which could have resulted in judgment for Defendants short of trial. A finding of a mere negligent violation would not permit Plaintiffs or the putative class to obtain statutory damages and Defendants have argued that those Plaintiffs and Class Members who were hired could not seek actual damages—the only type of damages available for a mere negligent violation.

As the Ninth Circuit held, "if [the employer's] interpretation of the FCRA is merely objectively unreasonable, it does not follow that [the plaintiff] is entitled to statutory damages." *Syed,* 853 F.3d at 504-05. While Plaintiffs believe that a reading of the FCRA that lacks a foundation in the statutory text can support a finding of willfulness, Defendants have argued that the Supreme Court has found that only explicit guidance from circuit courts can support a finding of willfulness. *Safeco v. Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 (2007). Defendants contend that no appellate court had found certain challenged language extraneous before 2019, and that decision did not address whether there was a willful violation. *Gilberg*, 913 F.3d at 1174. Defendants also rely on the fact that it was not until 2020 that the Ninth Circuit attempted to address what it called "a matter of *first impression*" exactly "what qualifie[d] as part of that 'disclosure . . . that a consumer report may be obtained for employment purposes.'" *Walker*, 953 F.3d at 1084 (emphasis added). Depending on the facts developed during discovery, Defendants may have advanced an argument that Plaintiffs and/or some Class Members lacked standing if they did not suffer a concrete injury. *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016). As such, the substantial risks associated with litigating a case in an unsettled area of the law weigh in favor the requested attorneys' fee award.

Accordingly, the risk of litigation weighs in favor of the reasonableness of the requested

attorneys' fee award of 25% of the Gross Settlement Fund.

### 3.   The skill required and quality of work

The skill required and quality of work performed in this case weigh in favor of the reasonableness of the requested attorneys' fee award because, as just described above, this case required considerable experience and skill to effectively litigate when considering the substantial risks inherent in FCRA litigation. Plaintiffs' counsel is highly experienced in employment issues and, in particular, class actions. *See* Lukasiewicz Decl., at ¶¶ 28-38.  This experience contributed to the favorable outcome and supports approval of the requested fees.   In addition, across the four cases, Plaintiffs and their counsel vigorously litigated this case and was able to negotiate a favorable, high-quality settlement for Plaintiffs and the Class providing an immediate monetary relief to those Class Members affected by Defendants' procurement of consumer and/or investigative consumer reports. Counsel's experience and skill contributed to the case and support approval of the requested fees and costs.

Accordingly, the skill required and quality of work performed in this case weigh in favor of the reasonableness of the requested attorneys' fee award of 25% of the Gross Settlement Fund.

### 4.   The contingent nature of the fee

The contingent nature of the fee weighs in favor of the reasonableness of the requested attorneys' fee award because Plaintiffs' counsel assumed a considerable risk of nonpayment despite expending considerable time and resources on this litigation. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299 ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."). Here, Plaintiffs' counsel took this case on a contingency basis with no assurance of ever recovering its fees and costs expended to litigate this matter on behalf of Plaintiffs and the Class. *See* Lukasiewicz Decl., at ¶ 25. From Plaintiffs and Class' perspective, it would have been impossible to finance this litigation on an hourly basis and, but for Plaintiffs' counsel's willingness to front the legal fees and costs in this risky litigation for over a year, this case simple would have never been litigated. *See* Lukasiewicz Decl., at ¶ 26. *See also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299–1300 (noting that contingent fees "are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether

they win or lose"). Thus, if the contingency "'bonus methodology' [for Plaintiffs' counsel] did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *Id.* at 1300 (quoting *Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)).

Accordingly, the contingent nature of the fee weighs in favor of the reasonableness of the requested attorneys' fee award of 25% of the Gross Settlement Fund.

### 5. Awards made in similar cases

Awards made in similar cases weigh in favor of the reasonableness of the requested attorneys' fee award of 25% of the Gross Settlement Fund.

Indeed, 25% of the common fund is routinely awarded as attorneys' fees awards in FCRA settlements in this Circuit. *See, e.g.*, *Feist*, 2018 WL 6040801, at *7; *Patton*, 2019 WL 6357266, at *5; *In re Uber FCRA Litig.*, 2018 WL 2047362, at *6; *Smith*, 2017 WL 3610592, at *10; *Esomonu*, 2019 WL 499750, at *7; *Rhom v. Thumbtack, Inc.*, No. 16-cv-2008, 2017 WL 4642409, at *7 (N.D. Cal. Oct. 17, 2017).

Further, numerous district courts within this Circuit have awarded even higher percentages of the common fund for attorneys' fees awards in FCRA settlements. *See, e.g.*, *Quiruz*, 2020 WL 6562334, at *10–11 (awarding 31% of the common fund in FCRA settlement); *Burnthorne-Martinez*, 2018 WL 5310833, at *2–3 (awarding one-third of the common fund in FCRA settlement); *Ford v. CEC Ent. Inc.*, No. 14-cv-677, 2015 WL 11439033, at *1 (S.D. Cal. Dec. 14, 2015) (awarding one-third of the common fund in FCRA settlement); *Santos v. Jacob Oil Co.*, No. 14-cv-738, 2015 WL 5732829, at *16 (E.D. Cal. Sept. 29, 2015) (awarding one-third of the common fund in FCRA settlement); *Razilov v. Nationwide Mutual Ins. Co.*, No. 01-cv-1466, 2006 WL 3312024, at *1 (D. Or. Nov. 13, 2006) (awarding 30% of the common fund in FCRA settlement).

Accordingly, the attorneys' fees award made in similar cases weigh in favor of the reasonableness of the requested attorneys' fee award of 25% of the common fund.[7]

---

[7] While a lodestar cross-check is not typically required under the Ninth Circuit, as discussed below, the requested fee award is similarly satisfied under the lodestar method. *Craft v. Cty. of San*

14

C. **The Requested Award for Attorneys' Fees is Reasonable Under the Lodestar Method**

While Plaintiffs' counsel's requested fee award is "presumptively reasonable" under the percentage-of-the-fund method, Plaintiffs' counsel's requested fee is similarly appropriate under a lodestar method analysis. This less commonly used lodestar method "is calculated by multiplying the number of hours . . . reasonably expended on the litigation . . . by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d at 941 (citation omitted).

1. Plaintiffs' counsel's number of hours expended in this litigation

Here, as evidenced by the over 450 hours expended in this matter, Plaintiffs' counsel was required to undertake significant legal work on behalf of Plaintiffs and Class Members, including investigating Plaintiffs' claims, communicating with dozens of Class Members, drafting the complaint, conducting legal research on the pertinent unsettled legal issues involved in the case, participating in settlement negotiations, and preparing and filing the requisite settlement approval documents. *See* Lukasiewicz Decl., at ¶ 41. These hours were broken down by attorney and paralegal time as illustrated in the chart within the Lukasiewicz Decl., at ¶ 45. Notably, these hours do not reflect the time that Plaintiffs' counsel will continue to spend on administering the Settlement in the future, including handling telephone calls and inquiries from Class Members. *See id.* at ¶ 42. Nor does it include tens of hours of time that Plaintiffs' counsel has voluntarily excluded through its use of billing judgment discretion. *Id.*

2. Plaintiffs' counsel's reasonable hourly rates

The reasonable hourly rate is determined by "the experience, skill, and reputation of the attorney requesting the fees" and "should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *See Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995). Plaintiffs' counsel's hourly rates meet this standard and are comparable to those rates of other class action attorneys with similar experience within this district. *See* Lukasiewicz Decl., at ¶ 46. *See, e.g.*, *Der-Hacopian v. DarkTrace, Inc.*, No. 18-cv-6726, 2020 WL 7260054, at *8 (N.D. Cal. Dec. 10, 2020) (finding $775 for partner, $400 for associates, and

*Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008) ("A lodestar cross-check is not required in this circuit[.]").

$225 for paralegals to be reasonable hourly rates in FCRA case); *Esomonu*, 2019 WL 499750, at *7 (finding $750 hourly rate for partner reasonable in FCRA case); *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-2200, 2020 WL 6484833, at *11 (N.D. Cal. Nov. 4, 2020) (finding associate hourly rates between $425 and $695 to be "in line with prevailing rates in this district").

Further, the lawyers at Thomas & Solomon LLP are seasoned litigators who are experienced in employment issues with considerable experience in prosecuting class actions and other complex litigation. *See* Lukasiewicz Decl., at ¶ 29. For example, founding partner J. Nelson Thomas currently sits on the American Bar Association's editorial board for the Fair Labor Standards Act treaties and is a nationally recognized speaker on class and collective actions. *Id.* at ¶ 30. Partner Jessica Lukasiewicz has litigated class and collective actions for over twelve years at Thomas & Solomon LLP. *Id.* at ¶ 32. Associate Jonathan Ferris has litigated class and collective actions for over eight years at Thomas & Solomon LLP. *Id.* at ¶ 33. Associate Erin Hanlon is a 2009 graduate of Pace Law School. *Id.* at ¶ 34. Associates Conor Tallet and Adam Sanderson are 2018 graduates of Syracuse University College of Law. *Id.* at ¶ 35. During their time with Thomas & Solomon LLP, Mr. Thomas, Ms. Lukasiewicz, Mr. Ferris, Ms. Hanlon, Mr. Tallet, and Mr. Sanderson have represented thousands upon thousands of class members, in both class and collective actions. *See id.* at ¶ 37. As such, Plaintiffs' counsel's hourly rates reflect their experience, skill, and reputation.

### 3. Plaintiffs' counsel's lodestar calculation

When multiplying Plaintiffs' counsel's 461.1 hours expended in this matter by the reasonable hourly rates of each attorney and paralegal involved in this matter, Plaintiffs' counsel's lodestar amounts to $205,988.50. This calculation is illustrated by the chart set forth in the Lukasiewicz Decl., at ¶ 45.

Plaintiffs' counsel's lodestar of $205,988.50 is right in line with the 25% benchmark percentage-of-the-fund value of $259,368.53 sought by counsel. Although the requested 25% fee award is slightly above Plaintiffs' counsel's lodestar, the Ninth Circuit has emphasized that "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by *paying them a premium over their normal hourly rates for winning contingency cases*." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299 (noting that without this "'bonus' methodology . . . very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and

money, especially in light of the risks of recovering nothing") (emphasis added). As such, Plaintiffs'

counsel's requested fee is reasonable and almost directly in line with its actual lodestar.

### 4.   Plaintiffs' counsel's requested multiplier is reasonable

Should this Court choose to apply the lodestar method to determine attorneys' fees, Plaintiffs'

counsel respectfully requests a multiplier of 1.26 to square Plaintiffs' counsel's lodestar figure of

$205,988.50 up with the requested 25% of the common fund amount of $259,368.53. The requested

multiplier is *de minimis*—and therefore reasonable—and is far below the multipliers generally awarded

in this Circuit. *See, e.g.*, *Vizcaino*, 290 F.3d 1051, 1051 n.6 (affirming 25% fee recovery, which was

supported by lodestar cross-check with a multiplier of 3.65, and explaining that the multiplier "was within

the range of multipliers applied in common fund cases" where the "bare majority" of multipliers fall in

the "1.5–3.0 range") (citation omitted); *In re Veritas Software Corp. Securities Litig.*, No. 03-cv-283,

2005 WL 3096079, at *13 (N.D. Cal. Nov. 15, 2005) (awarding multiplier of 4 noting that it is "within

the typical range identified by the Ninth Circuit in *Vizcaino*") (Chesney, J.); *Steiner v. Am. Broadcasting

Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (affirming a multiplier of 6.85 finding it to "fall[] well within

the range of multipliers that courts have allowed"); *Craft*, 624 F. Supp. 2d at 1125 (awarding a multiplier

of approximately 5.2 noting the "ample authority for such awards resulting in multipliers in this range or

higher") (collecting cases).[8]

---

[8]   *See also Salgado v. T-Mobile USA, Inc.*, No. 17-cv-339, 2020 WL 3127931, at *25 (E.D. Cal. June 12, 2020) (awarding multiplier of 3.70, "which is within the range accepted by Ninth Circuit"); *Smith*, 2020 WL 6689209, at *6–7 (awarding attorneys' fees with a multiplier of 3.8 in FCRA action); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. Aug. 16, 1995) (noting a multiplier of 3.6 was "well within the acceptable range for . . . complicated class action litigation"); *McLeod v. Bank of Am., N.A.*, No. 16-cv-3294, 2019 WL 1170487, at *7 (N.D. Cal. Mar. 13, 2019) (awarding multiplier of 3.5); *Lazarin v. Pro Unlimited, Inc.*, No. 11-cv-3609, 2013 WL 3541217, at *8 (N.D. Cal. July 11, 2013) (awarding attorneys' fees representing a multiplier of 3.36); *Hopkins v. Stryker Sales Corp.*, No. 11-cv-2786, 2013 WL 496358, at *6 (N.D. Cal. Feb. 6, 2013) (awarding multiplier of 2.76 and noting that the multiplier awarded "falls within the 'majority' range for risk multipliers"); *Etter v. Allstate Ins. Co.*, No. 17-cv-184, 2018 WL 5791883, at *5 (N.D. Cal. Nov. 4, 2018) (awarding a multiplier of 2.53); *Kutzman v. Derrel's Mini Storage, Inc.*, No. 18-cv-755, 2020 WL 5909151, at *11–12 (E.D. Cal. Oct. 6, 2020) (awarding attorneys' fees with a multiplier of 2.3 in FCRA action noting it "is [] comfortably in line with multipliers applied by other courts in connection with class action contingency cases" within the Ninth Circuit which are typically "in the 2-to-4 range"); *In re Wells Fargo Collateral Protection Ins. Litig.*, No. 17-cv-2797, 2019 WL 6219875, at *5 (C.D. Cal. Nov. 4, 2019) (awarding multiplier of 2.3); *Singh v. Roadrunner Intermodal Servs., LLC*, No. 15-cv-1497, 2019

---

17

Plaintiffs' counsel's requested multiplier is also confirmed to be reasonable when considering the various factors identified by Ninth Circuit such associated with the lodestar method, including: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the requisite legal skill necessary; (4) the preclusion of other employment; (5) the customary fee; (6) the contingent nature of the fee; (7) the amount involved and the results obtained; and (8) the attorneys' experience, reputation, and ability. *See In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d at 942, n.7.[9]

### a.   *The time and labor required*

The time and labor required to litigate this case was substantial. As discussed above, Plaintiffs' counsel expended over 450 hours in connection with the investigation, litigation, and settlement of this action with no assurance that it would ever be compensated for such time expended. Using Plaintiffs' counsel's hourly rates, Plaintiffs' counsel's attorneys' fees are currently over $205,000 for more than 450 hours worked on this matter. *See* Lukasiewicz Decl., at ¶¶ 41, 45. Dividing the requested fee by the current lodestar yields a multiplier of approximately 1.26, which, as discussed above, is well within the range of acceptable multipliers in this Circuit. *See supra*, n.6.

### b.   *The novelty and difficulty of the questions involved*

As discussed above in Section II(B)(2), *supra*, this action involved novel and unsettled questions of law under the FCRA. Indeed, just last March, the Ninth Circuit attempted to address what it called "a matter of first impression" as to "what qualifies as part of that 'disclosure . . . that a consumer report may be obtained for employment purposes'" under the FCRA. *See Walker*, 913 F.3d at 1084. The novel legal issues presented in this case required Plaintiffs' counsel to consistently stay apprised of recent

---

WL 316814, at *10 (E.D. Cal. Jan. 24, 2019) (awarding a multiplier of 2.03 noting it was "clearly in the range that courts have found to be acceptable"); *Quiruz*, 2020 WL 6562334, at *11 (awarding attorneys' fees with a multiplier of 1.95 in FCRA action noting the multiplier to be "entirely appropriate"); *Taylor v. FedEx Freight, Inc.*, No. 13-cv-1137, 2016 WL 6038949, at *7 (E.D. Cal. Oct. 13, 2016) (awarding a multiplier of 2.26); *Carter v. XPO Logistics, Inc.*, No. 16-cv-1231, 2019 WL 5295125, at *3 (N.D. Cal. Oct. 18, 2019) (awarding multiplier of 1.5).

[9]   Consistent with the Ninth Circuit's observation that most of these factors are already "subsumed within the initial calculation" of the lodestar, and that "[a]t least one factor is no longer valid— whether the fee was fixed or contingent[,]" Plaintiffs' counsel only addresses the most pertinent factors. *See In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d at 942 n.7 (citations omitted). As to the remaining factors, Plaintiffs' counsel has already addressed those in previous sections of this motion. *See supra*, Sections II(B)(2) (time to be expended by parties if this case had not settled); IV (nature and relationship with clients).

18

developments in this unsettled area of law, as well as look to comparable areas of the law to navigate issues of first impression such as whether the inclusion of both an investigative consumer report disclosure and a consumer report disclosure within the same document violates the FCRA (answered by the Ninth Circuit in March 2020 in the *Walker* case five months after the initiation of this action).

### c.   *The requisite legal skill necessary*

Plaintiffs' counsel demonstrated legal skill in bringing this action to a favorable resolution despite the risks, including the risk of demonstrating a violation on the merits, demonstrating that the violation was willful, and certify a class through trial and judgment.

### d.   *The preclusion of other employment*

Plaintiffs' counsel committed over 450 hours to investigating, litigating, and settling this matter with no assurance that it would recover its fees for the time expended. Plaintiffs' counsel's time investment in this action precluded its ability to take on other, potentially profitable work. *See* Lukasiewicz Decl., at ¶ 27.

### e.   *The customary fee*

As discussed above in Section II(B)(5), *supra*, the requested fee award of 25% of the Gross Settlement Fund is the "benchmark" award within this Circuit and regularly awarded in FCRA settlements. Further, the *de minimis* multiplier Plaintiffs' counsel seeks when applying the lodestar method is also well below the multiplier range customarily awarded in this district in class action settlements, including FCRA settlements.

### f.   *The contingent nature of the fee*

As discussed above in Section II(B)(4), *supra*, Plaintiffs' counsel undertook this litigation on a contingency basis without any assurance of recovering attorneys' fees or costs expended in this action. *See* Lukasiewicz Decl., at ¶ 25. And, as the Ninth Circuit has emphasized, "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Wash. Public power Supply Sys. Sec. Litig.*, 19. F.3d at 1299 (citation omitted).

g.     *The amount involved and the results obtained*

As discussed above in Section II(B)(1), *supra*, Plaintiffs' counsel achieved an excellent result for Plaintiffs and Class Members by negotiating a $1,037,414.10 Gross Settlement Fund, which provides an immediate monetary relief for Class Members well within the range awarded to class members in similar FCRA actions.

h.     *The Attorneys' Experience, Reputation, and Ability*

As discussed above in Section II(B)(3), *supra*, Plaintiffs' counsel required a high-level of experience and skill in order to effectively advocate for Plaintiffs and the Class in this matter.

Accordingly, the requested attorneys' fee award of $259,368.53 is reasonable under the lodestar method, which further confirms the reasonableness of the 25% percentage-of-the-fund amount sought through the use of a lodestar "cross-check."

## III.   PLAINTIFFS' COUNSEL'S REQUEST FOR REIMBURSEMENT OF OUT-OF-POCKET COSTS IS REASONABLE

Finally, Plaintiffs' counsel respectfully requests reimbursement of $6,358.30 in out-of-pocket costs reasonably incurred in connection with this litigation.

Reasonable costs are routinely reimbursed in class action litigation.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.") (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)); *Patton*, 2019 WL 6357266, at *6 (reimbursing Plaintiffs' counsel for costs related to legal research, postage, mediation fees, and filing fees); *Syed v. M-I LLC*, No. 14-cv-742, 2016 WL 310135, at *9 (E.D. Cal. Jan. 26, 2016) (reimbursing Plaintiffs' counsel for costs related to scanning, photocopying, mediation, travel, postage, court fees, and other office-related costs); *Rhom*, 2017 WL 4642409, at *7 (reimbursing Plaintiffs' counsel for costs related to filing expenses, document delivery, and travel).

Here, the requested costs were reasonable and necessary to the successful prosecution of this case and should be reimbursed.  *Id. See also* Fed. R. Civ. P. 23(h). Since the outset of this case, Plaintiffs' counsel has incurred more than $6,358.30 in unreimbursed costs prosecuting this case on behalf of the Class, including, but not limited to the following: (1) copying and printing costs; (2) research costs,

1  including Westlaw and Pacer; (3) postage costs; and (4) pro hac admissions, filing fees, and local counsel

2  costs. *See* Lukasiewicz Decl., at ¶¶ 47-48

3      Accordingly, Plaintiffs' counsel's request for reimbursement of $6,358.30 in out-of-pocket costs

4  reasonably incurred in connection with this litigation should be granted.

5  **IV.   THE REQUESTED SERVICE AWARDS FOR CLASS REPRESENATIVES ARE**
   **APPROPRIATE**

6

7      The requested service awards here of $6,000 for each Class Representative are reasonable given

8  the significant contributions made by each person, including those that contributed to the resolution of

9  the lawsuit.

10     As the Ninth Circuit has recognized, service awards "are intended to compensate class

11  representatives for work done on behalf of the class, to make up for financial or reputational risk

12  undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private

13  attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Service awards

14  are common in class action cases and serve to compensate plaintiffs for their time and effort in assisting

15  the prosecution of the action, and for the risk for the adverse actions they may suffer as the most visible

16  members of the Class.

17     District courts within this Circuit routinely find the amount requested here of $6,000 to each Class

18  Representative to be reasonable. *See, e.g.*, *Syed v. M-I, LLC*, No. 12-cv-1718, 2017 WL 3190341, at *9

19  (E.D. Cal. July 27, 2017) (awarding service awards of $15,000 and $20,000 to the class representatives

20  in FCRA action noting that the amounts were "not outside the realm of what has been approved as

21  reasonable by courts") (collecting cases); *Reyes v. Experian Info. Sols., Inc.*, No. 16-cv-563, 2020 WL

22  5172713, at *5 (C.D. Cal. July 30, 2020) (awarding a $15,000 service award to the class representative

23  in FCRA action); *Smith*, 2020 WL 6689209, at *7 (awarding a $10,000 service award to the class

24  representative in FCRA action); *Holman v. Experian Info. Sols., Inc.*, No. 11-cv-180, 2014 WL 7186207,

25  at *6 (N.D. Cal. Dec. 12, 2014) (awarding $10,000 service awards to each class representative in FCRA

26  action); *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. 19-cv-620, Dkt. No. 52 (C.D. Cal. Oct.

27  22, 2020) (awarding $10,000 service award to the class representative in FCRA action); *Watkins v.*

28

*Hireright, Inc.*, No. 13-cv-1432, Dkt. No. 153, at 8 (S.D. Cal. Sept. 30, 2016) (awarding $10,000 service awards to each class representative in FCRA action).

In determining the reasonableness of a service award, courts sometimes weigh various factors such as: "(1) the risk to the class representative in commencing the suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *See Van Vranken*, 901 F. Supp. at 299.

Here, an analysis of these factors likewise weighs in favor of granting the requested service awards.

### A.    The Risk to Class Representatives in Commencing the Suit

Plaintiffs Hutto and Melnyk each took at substantial risk in commencing this case—both financially and otherwise—as evidenced by the fact that they received no guarantee that they would ever recover any money in this lawsuit and incurred reputational risk to their future ability to perform work for Albertsons or another similar employer by having their names associated with an employment class action lawsuit as named plaintiffs. *See* Hutto Decl., at ¶¶ 3-4, 6; Melnyk Decl., at ¶¶ 3-4, 6. *See, e.g.*, *McNeal v. RCM Techs. (USA), Inc.*, No. 16-cv-5170, 2017 WL 2974918, at *1 (C.D. Cal. July 12, 2017) (awarding $10,000 service awards recognizing "the burdens and risks associated with being named Plaintiffs in a publicly filed lawsuit, including the risk of workplace retaliation or that potential employers might look unfavorably upon the decision to sue a former employer"); *Bravo v. Gale Triangle, Inc.*, No. 16-cv-3347, 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) (emphasizing the risk named plaintiffs take in employment class actions). As such, this factor weighs in favor of granting the requested service awards.

### B.    The Notoriety and Personal Difficulties Encountered by the Class Representatives

Given that this is each Class Representative's first time being involved as a named plaintiff in a class action lawsuit, it was not an easy decision for them to be personally involved in the lawsuit and each Class Representative encountered personal difficulties. *See* Hutto Decl., at ¶¶ 3, 6; Menlyk Decl., at ¶¶ 3, 6. As discussed above, these difficulties were exacerbated by the fact that Plaintiffs did not receive

any guarantee of payment and incurred reputational risk. *See id.* at ¶¶ []. As such, this factor weighs in favor of granting the requested service awards.

### C.      The Amount of Time and Effort Spent by the Class Representatives

Each Class Representative expended considerable time and effort throughout the course of this case. *See* Hutto Decl., at ¶ 13; Melnyk Decl., at ¶ 12. For example, prior to the filing of the complaint, each Plaintiff participated in interviews with Plaintiffs' counsel in order to provide the information necessary to evaluate the claims in this case, including spending time requesting their personnel files. *See* Hutto Decl., at ¶¶ 5, 7-8; Melnyk Decl., at ¶¶ 5, 7-8. This included being made aware of their obligations of class representatives, such as having their names associated with the lawsuit, the need to participate in discovery and a deposition, remaining in constant contact with Plaintiffs' counsel, and the need to potentially appear at court appearances. *See* Hutto Decl., at ¶ 5; Melnyk Decl., at ¶ 5. As Class Representatives, both Plaintiffs participated actively in the lawsuit over the course of this litigation, including keeping in touch with Plaintiffs' counsel on numerous separate phone calls, including corresponding with Plaintiffs' counsel via email and text, and discussing legal theories of the case, sources of evidence, their experiences, and the status of the case. *See* Hutto Decl., at ¶ 9; Melnyk Decl., at ¶ 9. Then, following the proposed Settlement of this action, each Class Representative participated in multiple phone calls with Plaintiffs' counsel to discuss the terms of the proposed Settlement, including the Memorandum of Understanding, the Settlement agreement and the exhibits. *See* Hutto Decl., at ¶ 10; Melnyk Decl., at ¶ 10. This included reviewing these documents in connection with Settlement and signing and returning executed documents by traveling to a mail carrier location. *See id.* Through their extensive involvement in this action, each Class Representative fairly and adequately represented the Class Members at all times. *See* Hutto Decl., at ¶ 12; Melnyk Decl., at ¶ 12. As such, this factor weighs in favor of granting the requested service awards.

### D.      The Duration of the Litigation

Plaintiffs Hutto and Melnyk have actively participated in the investigation and litigation of this case for well over a year. *See* Hutto Decl., at ¶¶ 3, 5-10; Melnyk Decl., at ¶¶ 3, 5-10. Although this action was originally filed in October of 2019, Plaintiffs were in contact with Plaintiffs' counsel prior to filing the complaint in order to assist with the investigation and provide critical information to Plaintiffs'

counsel necessary to assess the claims herein. *See* Hutto Decl., at ¶¶ 5-8; Melnyk Decl., at ¶¶ 5-8. As such, this factor weighs in favor of granting the requested service awards.

### E.       The Personal Benefit (or lack thereof) Enjoyed by the Class Representatives

In signing up to represent the class in this matter, each Class Representative was aware of the numerous risks and burdens associated with serving as a named plaintiff, including the fact that their names would be associated with the case, that they could be deposed, that they could be required to attend court hearings, and that their names could be publicized in the media. *See* Hutto Decl., at ¶ 5; Melnyk Decl., at ¶ 5. Along with their concerns about how serving as a Class Representative would affect their future employment opportunities, each Class Representative assumed considerable detriments in order to obtain their ultimate goal of achieving the best result and monetary benefits for Class as a whole. *See* Hutto Decl., at ¶¶ 4, 6, 11; Melnyk Decl., at ¶¶ 4, 6, 11. As

Given their crucial participation throughout the investigation, litigation, and settlement in this action, the requested service awards of $6,000 each for Plaintiffs Hutto and Melnyk are reasonable as they are squarely within the range that courts have awarded in this circuit. Indeed, the requested service awards are actually lower than service awards awarded to class representatives in other, comparable FCRA actions. Accordingly, this Court should grant Plaintiffs Hutto and Melnyk service awards in the amount of $6,000 each.

### CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that this Court grant this motion and award Plaintiffs' counsel's requested attorneys' fees in the amount of $259,368.53, and costs in the amount of $6,358.30, and service awards for Class Representatives in the amount of $6,000 each.

DATED: March 5, 2021                    Respectfully submitted,

                                        By:     /s Jessica L. Lukasiewicz
                                        **THOMAS & SOLOMON LLP**
                                        Jessica L. Lukasiewicz (admitted *pro hac vice*)
                                        Jonathan W. Ferris (admitted *pro hac vice*)
                                        693 East Avenue
                                        Rochester, NY 14607
                                        Telephone: 585-272-0540
                                        jlukasiewicz@theemploymentattorneys.com
                                        jferris@theemploymentattorneys.com

                                        Adam B. Wolf (Bar No. 215914)
                                        **PEIFFER WOLF CARR KANE & CONWAY,
                                        A PROFESSIONAL LAW CORPORATION**
                                        4 Embarcadero Center, Suite 1400
                                        San Francisco, CA 94111
                                        awolf@peifferwolf.com
                                        (415) 766-3545

                                        *Attorneys for Plaintiffs*

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
CASE NO. 3:20-CV-07541-MMC