Jessica L. Lukasiewicz (admitted *pro hac vice*)
Jonathan W. Ferris (admitted *pro hac vice*)
**THOMAS & SOLOMON LLP**
693 East Avenue
Rochester, NY 14607
Telephone: 585-272-0540
jlukasiewicz@theemploymentattorneys.com
jferris@theemploymentattorneys.com
(585) 272-0540

Adam B. Wolf (Bar No. 215914)
**PEIFFER WOLF CARR KANE & CONWAY,
A PROFESSIONAL LAW CORPORATION**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
awolf@peifferwolf.com
(415) 766-3545

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACI HUTTO and JENNIFER MELNYK, *individually and as representatives of the class*,<br><br>Plaintiffs,<br><br>v.<br><br>ALBERTSONS COMPANIES, INC., ALBERTSON'S LLC, ALBERTSONS COMPANIES, LLC, NEW ALBERTSONS, L.P., ALBERTSONS STORES SUB HOLDINGS, LLC, AB ACQUISITION LLC, AB MANAGEMENT SERVICES CORP., AMERICAN FOOD AND DRUG LLC, INK HOLDINGS, LLC, and ALBERTSON'S HOLDINGS LLC,<br><br>Defendants. | Case No. 3:20-cv-07541-MMC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date:** June 11, 2021<br>**Time:** 9:00 a.m.<br>**Courtroom:** 7, 19th Floor<br>**Judge:** Hon. Maxine M. Chesney |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

NOTICE OF MOTION ..................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES PRELIMINARY STATEMENT ... 2

   I.    PROCEDURAL BACKGROUND ................................................................. 2

   II.   THE SETTLEMENT AGREEMENT .......................................................... 5

       A.  The Settlement Class ..................................................................... 5

       B.  Benefits to Settlement Class Members ......................................... 5

       C.  Opt-Out Procedure ....................................................................... 6

       D.  Objection Procedure ..................................................................... 7

       E.  Attorneys' Fees, Costs, and Service Awards ................................ 8

            1.  Attorneys' Fees ................................................................. 8

            2.  Settlement Administration Costs ...................................... 8

            3.  Service Awards ................................................................. 9

       F.  Potential *Cy Pres* Distribution ..................................................... 9

       G.  Release ......................................................................................... 9

   III.  NOTICE HAS BEEN DISSEMINATED, AND THE RESPONSE FROM THE
        SETTLEMENT CLASS HAS BEEN POSITIVE ................................... 10

       A.  Direct Notice to Settlement Class Members ................................ 10

       B.  Settlement Wesite and Toll-Free Number  ................................. 11

       C.  Claims and Responses to Settlement Notice ............................... 11

ARGUMENT ................................................................................................................. 12

   IV.  THE COURT SHOULD GRANT FINAL APPROVAL TO THE
        SETTLEMENT ......................................................................................... 12

       A.  Legal Standard for Settlement Approval ..................................... 12

       B.  The Class Representatives and Class Counsel have adequately represented the
          Settlement Class ........................................................................... 13

C.  The Settlement was negotiated at arm's length ....................................... 14

D.  The relief provided to the Settlement Class is substantial .................................... 16

    1.  Continued litigation through trial and appeals would have entailed substantial costs, risks, and several years of delay ................................. 16

    2.  The Settlement provides for an effective distribution of proceeds to Settlement Class Members ........................................................................ 18

    3.  The terms of the requested award of attorneys' fees and costs, including timing of payment, also support settlement approval .............................. 20

    4.  The Parties have no other agreements pertaining to the Settlement ......... 21

    5.  The Settlement Agreement treats all Settlement Class Members equitably ...................................................................................................... 21

    6.  Settlement Class Members' response to the Settlement was uniformly positive ....................................................................................................... 22

**V.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED ................. 25**

**CONCLUSION ........................................................................................................... 25**

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:20-CV-07541-MMC

# TABLE OF AUTHORITIES

**Cases**     **Page**(s)

*Arthur v. SLM Corp.*,
No. 10-198, Dkt. No. 249 (W.D. Wash. Aug. 8, 2012)......................................................................23

*Castillo v. Seagate Tech. LLC*,
No. 16-1958, Dkt. Nos. 80, 85 (N.D. Cal. 2018)...............................................................................23

*Chakejian v. Equifax Info. Servs., LLC*,
275 F.R.D. 201 (E.D. Pa. 2011) .......................................................................................................23

*Der-Hacopian v. DarkTrace, Inc.*,
No. 18-cv-06726, 2020 WL 7260054 (N.D. Cal. Dec. 10, 2020) .....................................................18

*Dukes v. Air Canada*,
No. 18-cv-2176, 2020 WL 487152 (M.D. FL. Jan. 27, 2020)..........................................................23

*Esomonu v. Omnicare, Inc.*,
No. 15-cv-02003, 2019 WL 499750 (N.D. Cal. Feb. 8, 2019)....................................................24, 25

*Evans v. Linden Research, Inc.*,
No. C-11-01078, 2014 WL 1724891 (N.D. Cal. Apr. 29, 2014).......................................................23

*Feist v. Petco Animal Supplies, Inc.*,
No. 16-cv-1369, 2018 WL 6040801 (S.D. Cal. Nov. 16, 2018) .......................................................24

*Forcellati v. Hyland's, Inc.*,
No. 12-1983, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)...............................................................22

*G.F. v. Contra Costa Cty.*,
No. 13-cv-03667, 2015 WL 4606078 (N.D. Cal. July 30, 2015).......................................................15

*Gilberg v. Cal. Check Cashing Stores, LLC*,
913 F.3d 1169 (9th Cir. 2019) ..........................................................................................................17

*Hamilton v. SunTrust Mortg. Inc.*,
No. 13-60749, 2014 WL 5419507 (S.D. Fla. Oct. 24, 2014) ...........................................................23

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ..........................................................................................................12

*In Re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) ......................................................................................................15

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ......................................................................... 12, 15, 16

*In re Extreme Networks, Inc. Sec. Litig.*,
    No. 15-cv-04883, 2019 WL 3290770 (N.D. Cal. July 22, 2019) ......................................... 13

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................... 22

*In re HIKO Energy LLC Litig.*,
    No. 14-1771, Dkt. No. 93 (S.D.N.Y. May 9, 2016) ...................................................... 23

*In re LinkedIn User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) ......................................................................... 22

*In re Omnivision Tech., Inc.*,
    559 F.Supp.2d 1036 (N.D. Cal. 2008) ..................................................................... 24

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ...................................................................... Passim

*In re Uber FCRA Litigation*,
    No. 14-cv-05200, 2018 WL 2047362 (N.D. Cal. May 2, 2018) .................................. 16, 23

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    895 F.3d 597 (9th Cir. 2018) ......................................................................... 13, 16

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d. 1291 (9th Cir. 1994) ......................................................................... 20

*Lagos v. Leland Stanford Junior University*,
    No. 15-cv-04524, 2017 WL 1113302 (N.D. Cal. March 24, 2017) .................................. 16

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ......................................................................... 17

*Mandujano v. Basic Vegetable Products, Inc.*,
    541 F.2d 832 (9th Cir. 1976) ......................................................................... 24

*Marcum v. Dolgencorp*
    No. 12-cv-00108, Dkt. No. 87 (E.D. Va. Feb. 14, 2015) .................................. 23

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .................................................................. 15, 18, 22

-iv-

*Pelletz v. Weyerhaeuser Co.*,
  255 F.R.D. 537 (W.D. Wash. 2009) ........................................................................ 22

*Perkins v. LinkedIn Corp.*,
  No. 13-CV-04303, 2016 WL 613255 (N.D. Cal. 2016) .......................................... 14

*Ramirez v. TransUnion LLC*,
  951 F.3d 1008 (9th Cir. 2020) ............................................................................... 17

*Rhom v. Thumbtack, Inc.*,
  No. 16-cv-02008, 2017 WL 4642409 (N.D. Cal. Oct. 17, 2017) .......................... 23

*Roe v. Frito-Lay, Inc,*
  No. 14-cv-00751, 2017 WL 1315626 (N.D. Cal. Apr. 7, 2017) ............................ 22

*Sadowska v. Volkswagen Grp. of Am.*,
  No. 11-cv-00665, 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) .......................... 20

*Satchell v. Fed. Exp. Corp.*,
  No. 03-cv-0659, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ............................ 15

*Syed v. M-I LLC*,
  No. 14-cv-00742, 2019 WL 3564467 (E.D. Cal. Aug. 6, 2019) ............................ 23

*Touhey v. United States*,
  No. 08-1418, 2011 WL 3179036 (C.D. Cal. July 25, 2011) .................................. 23

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ................................................................................. 8

*Walker v. Fred Meyer, Inc.*,
  953 F.3d 1082 (9th Cir. 2020) ............................................................................... 17

*Zepeda v. PayPal, Inc.*,
  No. 10-1668, 2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) ................................ 23

**Statutes**

15 U.S.C. § 1681n(a)(1)(A) .......................................................................................... 16

28 U.S.C. § 1715(a) ....................................................................................................... 3

**Rules**

Fed. R. Civ. P. 23 ................................................................................................. *Passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

**PLEASE TAKE NOTICE THAT** on June 11, 2021, at 9:00 am, or as soon thereafter as the matter may be heard in the United States District Court for the Northern District of California, located at the San Francisco Courthouse, Courtroom 7, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102 before the Honorable Maxine M. Chesney, Plaintiffs Jaci Hutto and Jennifer Melnyk will and hereby do move this Court, in accordance with Federal Rule of Civil Procedure 23, for an Order:

      a.      Approving the proposed Settlement Agreement (Dkt. No. 38-2), as fair, reasonable, and adequate to Plaintiffs and the Settlement Class Members, and directing the Settlement Agreement's consummation according to its terms;

      b.      Finding that the form and manner of Class Notice implemented pursuant to the Settlement Agreement: (i) constitutes reasonable notice and the best practicable notice; (ii) constitutes notice reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the litigation, the terms of proposed Settlement Agreement, the right to object to the proposed Settlement Agreement or exclude themselves from the Settlement Class, and the right to appear at the Final Fairness Hearing; and (iii) meets the requirements of state and federal due process, the Federal Rules of Civil Procedure, and any other applicable state and/or federal laws;

      c.      Certifying the Settlement Class for settlement purposes;

      d.      Finding that all Settlement Class Members shall be bound by the Settlement Agreement, including its release provisions except for those who have submitted a valid opt-out request;

      e.      Directing that judgment be entered dismissing with prejudice all individual and class claims asserted in the litigation and ruling that no costs or fees be assessed on either party other than as expressly provided in the Settlement Agreement and awarded by the Court in ruling upon Plaintiffs' Motion for Attorneys' Fees, Costs, and Representative Service Payments, Dkt. No. 48;

      f.      Incorporating the release and related provisions set forth in the Settlement Agreement and barring any Released Claims against the Released Parties;

      g.      Approving payment of the benefits to the Settlement Class Members consistent with the Settlement Agreement; and

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:20-CV-07541-MMC

h.      Retaining jurisdiction of all matters relating to the interpretation, administration, implementation, and enforcement of the Settlement Agreement.

As discussed in the accompanying memorandum of points and authorities approval of the Settlement Agreement and the related relief requested herein, is appropriate under applicable law and well justified under the circumstances of this matter.

This motion is based on the notice of motion and motion; the accompanying memorandum of points and authorities; the Settlement Agreement, including all exhibits thereto, and all papers filed in support thereof; the accompanying declarations of Jessica L. Lukasiewicz ("Lukasiewicz Decl.") and Keith Salhab ("Salhab Decl.") of Claims Administrator American Legal Claims Services; the argument of counsel; all papers and records on file in this case; and such other matters as the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

On February 19, 2021, this Court preliminarily approved the proposed Settlement Agreement ("Settlement Agreement" or "Agreement") reached by the Parties in this litigation and approved the Parties' proposed Settlement Notice. Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Prelim. Approval Order"), Dkt. 47. Notice has now been disseminated to Settlement Class Members in accordance with the notice program and the Settlement Class Members' response to the Settlement has been overwhelmingly positive. Through this motion, Plaintiffs respectfully request that the Court conduct a final review of the Settlement Agreement and approve it as fair, reasonable and adequate.

The Settlement Agreement is the product of extensive arms-length negotiations between the Parties and their counsel, and is fair, reasonable and adequate given the claims and relief sought, the alleged harm, and the litigation risks.

Under the terms of the Settlement Agreement, Defendants agree to pay a total of $1,037,474.10 to settle Plaintiffs' claims in this class action case. Settlement Agreement ¶ 39. The majority of this Gross Settlement Sum will be distributed to Authorized Claimants who submitted valid Claim Forms. In addition, Plaintiffs have requested that, out of the Gross Settlement Sum, the Court approve Service

Awards to Class Representatives Attorneys' Fees and Expenses, and Settlement Expenses (not including the cost of notice pursuant to CAFA, which will be paid separately by Defendants) to the Claims Administrator. [1] *Id.* The Net Settlement Sum – that is, the remainder of the Gross Settlement Sum after deducting (i) the amount approved by the Court for Class Counsel's Fees and Costs; (ii) the Service Awards to the Class Representatives as approved by the Court; and (iii) Settlement Administration Expenses, shall be distributed to the Settlement Class Members on a *pro rata* basis, based on the total number of Settlement Class Members who submitted valid Claim Forms. *Id.* ¶ 17, 48.

The checks to Authorized Claimants shall be valid for one hundred and twenty (120) calendar days. *Id.* ¶ 48(e). If an Authorized Claimant requests a check to be reissued within the 120-day period, the Claims Administrator will, upon confirming that the Authorized Claimant's check was not cashed, reissue that Authorized Claimant's check. *Id.* Reissued checks will be valid until the later of (1) the end of the 120th calendar day period that the initial check was issued or (2) forty-five (45) calendar days after the date of the reissued check, whichever is later. *Id.* If Authorized Claimants receiving their Individual Settlement Payment by mailed check fail to deposit those checks after one hundred and twenty (120) calendar days or forty-five (45) calendar days after the date of the reissued check, whichever is later,[2] the amount shall be distributed either (a) to the Authorized Claimants who have cashed checks on a *pro rata* basis in a secondary distribution, or (b) if it is administratively infeasible to provide such a secondary distribution, on a *cy pres* basis to the proposed *cy pres* beneficiary. *Id.* ¶ 48(e). The Parties have proposed, and the Court has preliminarily approved (Dkt. No. 47), the Employment Rights Project at Bet Tzedek Legal Services as the potential *cy pres* recipient. Dkt. No. 44, ¶¶ 5-6. In no event will any unclaimed settlement funds revert to Defendants.  Settlement Agreement ¶ 48(e).

The Settlement provided for a robust, multi-pronged notice program and a user-friendly payment-election process, which have been implemented by the Claims Administrator. The Court-approved notice

---

[1]     The Claims Administrator will mail the required notices required under the CAFA, 28 U.S.C. § 1715(a). Settlement Agreement ¶ 57(a).
[2]     To the extent any mailed checks are returned with forwarding address information, the Claims Administrator will re-mail a check to the new address, and if checks are returned without forwarding addresses, the Claims Administrator will make reasonable efforts to identify an updated address and re-mail a check. Settlement Agreement, Exhibit D ¶ 4(g).

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:20-CV-07541-MMC

program provided for notice by email to Settlement Class Members, followed by a mailed postcard notice to Settlement Class Members for whom the initial email was returned as undeliverable or for whom Defendants did not have an email address. *Id.* ¶ 43(b). Ultimately, the Claims Administrator emailed notices to 55,376 Settlement Class Members and mailed physical notice to 11,735 Settlement Class Members – in other words, over 98% of the Settlement Class ultimately received the notice. Salhab Decl. ¶ 13. In addition, the Claims Administrator sent reminder email notices to 54,049 Settlement Class Members and reminder postcards to 11,933 Settlement Class Members. *Id.* ¶ 16.

The reaction from Settlement Class Members has been overwhelmingly positive and strongly supports final approval. By submitting valid Claim Forms, 3,408 Settlement Class Members have affirmatively voted "yes" to this Settlement and requested their Individual Settlement Payments. *Id.* ¶ 18. The deadline for Settlement Class Members to submit Claim Forms, opt-out, or object was April 30, 2021. Settlement Agreement ¶¶ 3, 18, 46, 47; Prelim. Approval Order, Dkt. No. 47. The Parties subsequently agreed to allow late filed Claims Forms submitted through May 10, 2021. Salhab Decl. ¶ 18 n.2. This resulted in 38 late filed claims. *Id.* ¶ 18. The Parties agreed to accept all these late-filed claims as valid. *Id.* This brought the total number of valid claims to 3,446. *Id.* In contrast to the 3,446 valid Claim Forms that were submitted, to date, twenty-three (23) individual Settlement Class Members have opted out, and one submitted an objection. *Id.* ¶¶ 17, 19. Together, less than 0.03% of the Settlement Class opted out or objected to the Settlement. *Id.* ¶¶ 13, 17, 19. Put another way, more than 98.4% of the Settlement Class approved of the Settlement. *Id.*

Based on the number of Authorized Claimants, and applying the terms set forth in the Settlement Agreement ¶ 40, Settlement Class Members will receive Individual Settlement Payments of $205.96 (assuming the Court awards Class Counsel the full amount of their requested Attorneys' Fees and Expenses and Class Representatives the full amount of their requested Service Awards). Lukasiewicz Decl. ¶ 45. In relation to the likely recovery after trial, and in light of the risks that continued litigation would entail, as described in more detail below, these Individual Settlement Payments represent an excellent recovery for Settlement Class Members.

For the foregoing reasons and the others detailed below, the Settlement meets the standards for

final settlement approval.

## I.       PROCEDURAL BACKGROUND

In their Motion for Preliminary Approval of Class Action Settlement, Plaintiffs described the procedural history, discovery, and history of settlement negotiations that led to the Settlement Agreement that is the subject of this motion. Dkt. No. 38, at 2-6. Plaintiffs filed their Preliminary Approval Motion on December 30, 2020. *Id*. The preliminary approval hearing was held on February 12, 2021. Lukasiewicz Decl. ¶ 36.  At that hearing, this Court instructed the Parties to consider some edits to the Settlement Notice and Claim Form. *Id*.  Shortly thereafter, on February 18, 2021, counsel for Plaintiffs made the necessary modifications—including, but not limited to, revising the Settlement Notice, Claim Form, and other documents— and filed a supplemental declaration attaching those revised documents, which correspond to Exhibits A, B, G, and I to the Settlement Agreement. Dkt. No. 44-2. This Court then held a conference call to address the revised documents. Dkt. No. 46.

On February 19, 2021, the Court issued its Order granting Plaintiffs' Preliminary Approval Motion. Dkt. No. 47.  Following entry of the Preliminary Approval Order, Class Counsel worked closely with the Court-appointed Claims Administrator, American Legal Claims Services, LLC ("ALCS"), and with Defendants' counsel to implement the Settlement Notice program approved by this Court. Lukasiewicz Decl. ¶ 38.

On March 5, 2021, Plaintiffs and their counsel filed a Motion for Attorneys' Fees, Costs, and Class Representative Service Awards. Dkt. No. 48.

## II.      THE SETTLEMENT AGREEMENT

### A.      The Settlement Class

The Settlement Class is defined as: "All employees and/or prospective employees of Defendants within the United States who were the subject of a consumer report by Defendants anytime between October 24, 2017 and November 25, 2019, inclusive." Settlement Agreement ¶ 28.

### B.      Benefits to Settlement Class Members

Under the terms of the Settlement Agreement, Defendants agree to pay the Gross Settlement Sum of $1,037,474.10, which will be used to pay (i) Authorized Claimants; (ii) Service Awards to the Class

Representatives (as approved by the Court); (iii) Attorneys' Fees and Expenses to Class Counsel (as approved by the Court), and (iv) Notice and settlement administration costs (not including the cost of CAFA, which shall be paid separately by Defendants in addition to the Gross Settlement Sum). *Id.* ¶¶ 15, 39.

Under the Settlement, all Settlement Class Members are eligible for a Settlement payment. In order to receive payment from the Net Settlement Sum, Settlement Class Members must have completed and submitted a simple Claim Form – as over 3,500 Settlement Class Members did. The Claim Form was available on the Settlement website, where it could be completed and submitted online; the Settlement Class Members could also download or request a Claim Form by phone and submit the Claim Form by mail, email, or fax. Settlement Agreement ¶ 43; Settlement Agreement Exhibits D(2)[3] and I.[4] Settlement Class Members could elect to be paid in a variety of forms: by mailed check, PayPal, Apple Pay via e-Mastercard, or digital payment via Zelle, or Venmo. Salhab Decl. ¶ 20.

The actual payments to Authorized Claimants depend on the number of Settlement Class Members who submit Claim Forms. Based on the number of valid Claim Forms received, and assuming that the Court awards Class Counsel the full award of attorneys' fees and expenses requested, and the Class Representatives the full amount of their requested Service Awards, it is anticipated that Settlement Class Members who submitted a valid Claim Form will each receive an Individual Settlement Payment of $205.96. Lukasiewicz Decl. ¶ 45.

### C.    Opt-Out Procedure

Settlement Class Members had two options to opt out of the Settlement Agreement: (i) sending a signed letter by U.S. Mail to the Claims Administrator at the address provided in the Settlement Notice; or (ii) electronically submitting a completed opt-out form available on the Settlement website. Settlement Agreement ¶ 46. Any Settlement Class Member could opt out of the Settlement Agreement. The deadline to submit opt-out requests was April 30, 2021. Dkt. No. 47. Settlement Class Members who opted out will not release any claims pursuant to the Settlement Agreement. Settlement Agreement ¶ 46. A total of

---

[3]    As modified in Dkt. No. 44-2.
[4]    As modified in Dkt. No. 44-2.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:20-CV-07541-MMC

twenty-three (23) individual Settlement Class Members (or approximately 0.03% of the Class) have opted out. Salhab Decl. ¶ 17.

The opt-out procedures set forth in the Settlement Agreement comply with the United States District Court for the North District of California's Procedural Guideline for Class Action Settlements. *See* http://www.cand.uscourts.gov/ClassActionSettlementGuidance.

### D.    Objection Procedure

Settlement Class Members were able to object to the Settlement by filing their written objections through the Court's Case Management/Electronic Case Files system, mailing them to the Claims Administrator, the Clerk of the Court for the United States District Court for the Northern District of California, or by filing them in person at any location of the United States District Court for the Northern District of California. Settlement Agreement ¶ 47. Only Settlement Class Members who did not opt-out could file objections. *Id*. The objection deadline was April 30, 2021, and only one objection has been submitted. Dkt. No. 47; Salhab Decl. ¶ 19.  The fact that only one objection was submitted reflects the positive response from Settlement Class Members.

On April 9, 2021, a single objection by Adin Byron Kimball was submitted to the Court.  *See* Dkt. No. 49. Given the difficulty in discerning the basis of the objection, Class Counsel reached out to the objector, Mr. Kimball ("Objector") via telephone in hopes of gaining further clarity as to the basis of his objection. Lukasiewicz Decl. ¶ 41. Based on both the written and verbal communications with the Objector, it is our best understanding that the following serves as the basis of the objection: (1) Defendants should be held criminally liable and pay restitution; (2) the Objector is the only proper candidate to be a named plaintiff in this matter because of his role in asset protection; (3) any expenses sought by Class Counsel should not be granted because they were expended prior to Settlement; (4) Defendant must acknowledge they committed fraud; and (5) all Settlement Class Members should not receive payment all at the same time.[5] *Id.*

The objection procedures set forth in the Settlement Agreement comply with the United States

---

[5]       As set forth below, each basis of the objection is without any legal and/or factual basis.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:20-CV-07541-MMC

District Court for the North District of California's Procedural Guideline for Class Action Settlements. *See* http://www.cand.uscourts.gov/ClassActionSettlementGuidance.

### E.    Attorneys' Fees, Costs, and Service Awards

#### 1.    Attorneys' Fees

On March 5, 2021, Class Counsel moved the Court for an award of attorneys' fees in the amount of $259,368.53, which equals the Ninth Circuit's "benchmark" of 25% of the common fund created through the Settlement, plus litigation expenses in the amount of $6,358.30. Dkt. No. 48. As explained in that motion, the requested award is supported by the results achieved, the risk of continued litigation, the quality of Plaintiffs' representation, awards in comparable cases, the contingent nature of the representation, the response of the Settlement Class, and Class Counsel's time spent on the matter, which resulted in a lodestar at the time of that filing totaling $205,988.50. *Id*. The requested fees therefore represent only a small multiplier of 1.26 to square Class Counsel lodestar figure of $205,988.50 up with the requested 25% of the common fund amount of $259,368.53. The requested multiplier is *de minimis* – and therefore reasonable – and is far below the multipliers generally awarded in this Circuit. *See e.g.*, *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051, n.6 (9th Cir. 2002) (affirming 25% fee recovery, which was supported by lodestar cross-check with a multiplier of 3.65, and explaining that the multiplier "was within the range of multipliers applied in common fund cases" where the "bare majority" of multipliers fall in the "1.5-3.0 range") (citation omitted). The Long Form Notice and Summary Notice informed Settlement Class Members that Class Counsel would seek an award of attorneys' fees up to on-quarter of the Gross Settlement Sum ($259,368.53), plus expenses. Settlement Agreement Exhibits A, B.[6, 7]

#### 2.    Settlement Administration Costs

Under the Settlement Agreement, all Settlement Administration Expenses are to be paid out of the Gross Settlement Sum, originally anticipated not to exceed $58,000. Settlement Agreement ¶ 29.

---

[6]    As modified in Dkt. No. 44-2.

[7]    To the extent the single objection claims that Class Counsel's expenses incurred prior to the Settlement should not be reimbursed, such a contention is without merit. The Federal Rules provide that "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Accordingly, the objection lacks legal support and should be overruled.

Currently, the Settlement Administration Expenses are $36,138.58. Salhab Decl. ¶ 21. The Settlement Administrator anticipates the remaining administration expenses to be $13,861.42, such that the Settlement Administrator does not anticipate that the Settlement Administration Expenses will exceed $50,000. *Id.*

### 3.   Service Awards

Plaintiffs' Motion for Attorneys' Fees, Costs, and Class Representative Service Payments was filed on March 5, 2021. Dkt. No. 48. In that motion, Plaintiffs requested Service Award payments in recognition of the risk and effort entailed in pursuing the Class Claims in this litigation. *Id.* As explained more fully in that motion, Class Representatives Hutto and Melnyk seek awards in the presumptively reasonable amount of $6,000. *Id.* The Service Awards would be paid out of the Gross Settlement Sum. Settlement Agreement ¶ 39. As noted in Plaintiffs' Motion for an Award of Attorneys' Fees, Costs, and Class Representative Service Awards, without the Class Representatives' invaluable participation, the Settlement would not have been achievable. *See* Dkt. No. 48.

### F.   Potential Cy Pres Distribution

Under the Settlement, if it is administratively feasible to do so, the amounts of Settlement funds from any uncashed checks will be sent in a secondary distribution to Authorized Claimants who cashed their checks. Settlement Agreement ¶ 48(e).  If it is infeasible to do so, however, any such remaining Settlement funds shall be distributed on a *cy pres* basis. *Id.*  The Parties recommend that any such *cy pres* award be made to Bet Tzedek Legal Services' Employment Rights Project ("ERP"). In its Order Granting Plaintiffs' Motion for Preliminary Approval, the Court preliminarily approved the ERP as recipient of any *cy pres* award. Bet Tzedek's ERP seeks to enforce minimum labor standards in the workplace by assisting low-wage workers. *See also* Dkt No. 47.

### G.   Release

The release under the Settlement for the Settlement Class Members is a narrow release. *See* Settlement Agreement ¶ 23. In exchange for the relief provided under the Settlement Agreement, Settlement Class Members who do not timely opt out of the Settlement will fully release Albertsons and its related and affiliated entities (the "Released Parties") of liability only for claims under the FCRA and

equivalent or corresponding state laws. *See id.* ¶¶ 23, 38. Notably, claims of persons outside of the Settlement Class who were screened after November 25, 2019 are not being released as part of this Settlement. *Id.* ¶ 23.

All Settlement Class Members were notified about the release of their claims in the notice materials. *See* Dkt. No. 44-1; Settlement Agreement ¶ 23. The Settlement Notices provided clear details as to how Settlement Class Members could elect to opt-out of the Settlement and not release their claims by submitting an exclusion form. *Id.* Settlement Class Members clearly understood this option as evidenced by the fact that twenty-three (23) Settlement Class Members elected to opt-out of the Settlement. *See* Lukasiewicz Decl. ¶ 39; Salhab Decl. ¶ 17.

Thus, under the Settlement Agreement, Settlement Class Members agree to release all claims that were actually brought in this suit, as well as all background check claims based on facts alleged in the included in the operative Complaint.  Settlement Agreement ¶ 23.

## III.   NOTICE HAS BEEN DISSEMINATED, AND THE RESPONSE FROM THE SETTLEMENT CLASS HAS BEEN POSITIVE

The robust notice program approved by this Court's Order granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement has been implemented by the Parties and the Claims Administrator. Lukasiewicz Decl. ¶ 38; Salhab Decl. ¶¶ 6-16.

### A.   Direct Notice to Settlement Class Members

The Court-approved a notice process through which the Claims Administrator would email the Summary Notice to each Settlement Class Member for whom an email address is available in the Defendants' records and send a postcard containing the Summary Notice to each Settlement Class Member for whom the initial email was determined to be undeliverable or for whom Defendants did not have an email address. Dkt. No. 47.

As explained in the Declaration of Claims Administrator Keith Salhab of ACLS, the Claims Administrator sent email notices to 56,034 Settlement Class Members. Salhab Decl. ¶ 13. 658 of these were returned as undeliverable. *Id.* The Claims Administrator then mailed physical copies of the

-10-

Summary Notice to all Settlement Class Members whose emails were returned as undeliverable or for whom Defendants did not have an email address. In total, the Claims Administrator mailed notice to 12,608 Settlement Class Members. *Id.* Prior to mailing, the Claims Administrator checked addresses against USPS's National Change of Address database, and the Claims Administrator performed additional searches for forwarding information for any mail returned as undeliverable. *Id.* ¶¶ 8-10.

Finally, the Claims Administrator sent out 54,049 reminder emails and 11,933 reminder postcards to Settlement Class Members who had not submitted a Claim Form. *Id.* ¶ 16. Prior to sending the reminder notices, the Claims Administrator had received 2,583 Claim Forms. *Id.* Between the mailing of the reminder notices and the close of the claims period, the Claims Administrator received almost 824 additional Claim Forms. *Id.*

**B.     Settlement Website and Toll-Free Number**

As required under the Settlement Agreement, the Claims Administrator established a website at www.AlbertsonsFCRA.com and a toll-free phone number that Settlement Class Members could call to obtain information about the Settlement Agreement and request a physical copy of the Long-Form Notice. Salhab Decl. ¶¶ 12, 14. Settlement Class Members were able to submit Claim Forms and Opt-Out Requests by mail, or through the Settlement website. Settlement Agreement Exhibit A.[8]

**C.     Claims and Responses to Settlement Notice**

As of April 30, 2021, the Claims Administrator received 3,408 valid Claim Forms. Salhab Decl. ¶ 18. As of May 10, 2021, the Claims Administrator received 38 late Claim Forms. *Id.*  After meeting and conferring regarding the late claims, the Parties agreed to accept as valid all of the late claims. Lukasiewicz Decl. ¶ 43. As a result, approximately 5.05% of all Settlement Class Members submitted valid Claim Forms. Salhab Decl. ¶ 18.

Compared to the number of claims, the number of opt outs is very low, at twenty-three (23), which represents 0.03% of the Settlement Class, and there is only a single objection. Salhab Decl. ¶ ¶ 17, 19.

---

[8]     As modified by Dkt. 44-2.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:20-CV-07541-MMC

**ARGUMENT**

## IV.   THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT

As set forth below, this Court should grant final approval to the Settlement Agreement and certify the Settlement Class for settlement purposes. The Settlement is fair, reasonable, and adequate, and the overlapping factors set forth by the Ninth Circuit in *In re Online DVD-Rental Antitrust Litig.* and the Federal Rule of Civil Procedure 23(e)(2), weigh strongly in favor of approval.

### A.   Legal Standard for Settlement Approval

In order to grant approval of a class action settlement, a court must determine if a proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ P. 23(e)(3). In making this determination, the Ninth Circuit has established a list of factors for courts to consider, including the following: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Further, when a proposed Settlement is negotiated prior to formal class certification, courts must also scrutinize the agreement for "evidence of collusion or other conflicts of interest." *In re Bluetooth Litig.*, 654 F.3d at 946 (citing *Hanlon*, 150 F.3d at 1026).

Additionally, the recent amendments to Rule 23 established a uniform set of factors courts should consider when determining whether a settlement is fair, reasonable, and adequate including whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arms length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

-12-

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed R. Civ. P. 23(e)(2).

A judge in this District has noted that the Advisory Committee notes "explain that the enumerated, specific factors added to Rule 23(e)(2) are not intended to 'displace' any factors currently used by the courts, but instead aim to focus the court and attorneys on 'the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019) (quoting Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2)). "Accordingly, the Court applies the framework set forth in Rule 23 with guidance from the Ninth Circuit's precedent, bearing in mind the Advisory Committee's instruction not to let '[t]he sheer number of factors' distract the Court and parties from the 'central concerns' underlying Rule 23(e)(2)"—the fairness, reasonableness, and adequacy of the proposed settlement." *Id.* at *6. Ultimately, "the underlying question remains this: Is the settlement fair?" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).

## B. The Class Representatives and Class Counsel have adequately represented the Settlement Class

Under Rule 23(e)(2)(A), the Court should consider whether the Class Representatives and Class Counsel have adequately represented the Settlement Class. Here, the Class Representatives have diligently represented the Settlement Class. Specifically, the Class Representatives spent many hours performing tasks related to this case.[9]

The Class Representatives assisted Class Counsel in preparing the complaints, staying apprised of the litigation, including numerous telephonic conferences with Class Counsel, and made decisions with the best interests of the Settlement Class in mind. *See* Hutto Decl. ¶¶ 5-13; Melynk Decl. ¶¶ 5-12.

---

[9]     *See* Declaration of Plaintiff Jaci Hutto in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Costs and Service Awards ("Hutto Decl."), Dkt. No. 48-2; Declaration of Plaintiff Jennifer Melynk in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Costs and Service Awards ("Melnyk Decl."), Dkt. No. 48-3.

Further, Class Counsel have more than adequately represented the Settlement Class. As discussed in Plaintiffs' Motion for an Award of Attorneys' Fees, Class Counsel devoted over 450 hours litigating this case. *See* Dkt. No. 48 at 5. Class Counsel vigorously prosecuted this case since its inception, including thoroughly investigating Plaintiffs' claims, communicating with dozens of Settlement Class Members, conducting significant legal research to navigate the numerous unsettled issues in FCRA litigation, and expended significant time in the related Safeway Action, addressing the pertinent legal issues necessary to drive the litigation in this, related matter, of which those hours expended in the Safeway Action ultimately served as the catalyst to the resolution of this action.  Lukasiewicz Decl. ¶¶ 7-17, 19, 23-27, 42, 50.

Class Counsel is also well positioned to evaluate the Settlement. *Id.* ¶¶ 56-64. Class Counsel has extensive experience litigating complex class actions, recovering millions of dollars on behalf of employees in such cases.[10] As such, Class Counsel's reputation and skill in developing evidence supporting liability, damages, and the propriety of class certification were key to reaching a favorable Settlement in a case against well-represented and well-funded Defendants. *See Perkins v. LinkedIn Corp.*, No. 13-CV-04303, 2016 WL 613255, at *3 (N.D. Cal. 2016) ("[T]he views of Plaintiffs' counsel, who are experienced in litigating and settling complex consumer class actions, weigh in favor of final approval."). Based on Class Counsel's experience and knowledge, the Settlement is fair, adequate, and reasonable.

As such, this factor weighs in favor of approval.[11]

### C.   The Settlement was negotiated at arm's length

Rule 23(e)(2)'s second factor relates to whether the Settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). Here, because this action similarly involved the same central question about the requisite disclosure document, similar underlying disclosure documents, and had defendants related

---

[10]   *See* Declaration of Jessica L. Lukasiewicz attached to Plaintiffs' Motion for an Award of Attorneys' Fees, Costs, and Class Representative Service Awards ("March Lukasiewicz Decl.") ¶¶ 28-38, Dkt. No. 48-1 (Mar. 5, 2021).

[11]   This factor under Rule 23(e) also comports with the sixth factor of *In re Online DVD-Rental* which examines the experience and view of counsel. 779 F.3d at 944.  For the same reasons set forth in Section I(C), this factor similarly weighs in favor of approving the Settlement.

-14-

to those in the Safeway and Vons Actions, after exchanging the necessary documentation, the Parties in this action used the constructs of the settlement in the Safeway Action and Vons Actions to similarly reach a resolution. Lukasiewicz Decl. ¶ 26. The Parties then signed a Memorandum of Understanding having reached a Settlement in principle. *Id*. ¶ 27. Judge Sabraw's involvement in the related Safeway and Vons settlement negotiations, which ultimately led to the resolution in this related action, is strong evidence that the settlement was negotiated at arm's length. *See In Re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) (Courts generally have recognized that "the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."(internal citations omitted)); Fed. R. Civ. P. 23(e)(2)(B), Advisory Committee Notes ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *G.F. v. Contra Costa Cty.*, No. 13-cv-03667, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.'") (quoting *Satchell v. Fed. Ex. Corp.*, No. 03-cv-0659, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)). Furthermore, as part of the mediation process in the related Safeway and Vons Actions, Defendants provided Plaintiffs with the FCRA disclosure forms at issue, allowing Plaintiffs to have sufficient information to determine whether the forms violated the FCRA and assess the strength of the case. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.").

Additionally, in light of the Ninth Circuit's instructions in *In re Bluetooth* that district courts must scrutinize settlements that are negotiated prior to class certification for evidence of collusion, there is no evidence of collusion here. 654 F.3d at 946. Here, the warning signs of collusion are absent: the requested attorneys' fees are proportional to class member compensation, there is no "clear sailing" arrangement whereby Defendants have agreed not to contest the fee motion, and no unawarded money will revert to Defendants. *See In re Volkswagen*, 895 F.3d at 611, n.19.

Accordingly, Rule 23(e)(2)'s second factor supports approving the Settlement.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:20-CV-07541-MMC

**D.      The relief provided to the Settlement Class is substantial**

Rule 23 provides that the third factor for courts to consider is whether "the relief provided for the class is adequate, taking in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the "central concern" is relief to class members. Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee's Notes; *see also In re Volkswagen*, 895 F.3d at 611 (the "factors and warning signs" identified in *In re Bluetooth* "are just guideposts;" the focus is fairness).

In a FCRA case, a prevailing plaintiff will receive statutory damages of between $100 and $1,000. 15 U.S.C. § 1681n(a)(1)(A). Courts in the Northern District of California have used the $100 per violation amount as the comparator for determining the fairness of a FCRA settlement. *Lagos v. Leland Stanford Junior University*, No. 15-cv-04524, 2017 WL 1113302 at *4 (N.D. Cal. March 24, 2017).

Assuming that the Court approves that requested attorneys' fees of $259,368.53, $6,358.30 in litigation costs, Service Awards of $6,000 to each Class Representative, and Settlement administration costs in the amount of $50,000, the Settlement Class Members who timely submit a valid Claim Form will each receive a payment of $205.96. Lukasiewicz Decl. ¶ 45. Notably, these payments exceed similar payments in settled FCRA cases. *Id.* at ¶ 46. *See e.g., In re Uber FCRA Litigation*, No. 14-cv-05200, 2018 WL 2047362, at *2 (N.D. Cal. May 2, 2018) (granting final approval to settlement of $73.99 and $32.15 per claimant); *see also* Lukasiewicz Decl. ¶ 46 (noting FCRA settlements with smaller payments amounts than in the instant action).

1.      <u>Continued litigation through trial and appeals would have entailed substantial costs, risks, and several years of delay</u>

Class actions involve high levels of cost, risk, and duration, which support the Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1238 (9th Cir. 1998).

Here, had the Parties not settled, the litigation would likely have been risky, protracted, and costly. Plaintiffs believe they would have been able to demonstrate that Defendants violated FCRA's "standalone disclosure" requirement, certify a class, and maintain it through final judgment and succeed on the merits of their claims. Were this case to continue without settling, however, each stage of this litigation would pose real risks to recovery.

First, prior to reaching the Settlement the Parties in the related Safeway and Vons Actions were set to brief motions for summary adjudication on the issue of whether Defendants violated the FCRA standalone disclosure requirement, which in turn would lead to similar motions and decisions here. Class Counsel believes that plaintiffs in the Safeway and Vons actions would have prevailed on this issue because Defendants' disclosure forms did not consist solely of a disclosure but also included language regarding rights under state laws and regarding the right to obtain and inspect consumer reports. *See Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1091 (9th Cir. 2020); *Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169, 1176-77 (9th Cir. 2019). Nonetheless, Defendants had colorable arguments that the disclosure was sufficient, and Plaintiffs in all cases faced the risk of an adverse decision that would end their case at this stage.

Second, there are unsettled legal questions in the novel area of standing under the FCRA. Defendants have consistently argued that even if the disclosure forms violated the FCRA, Plaintiffs would be unable to certify a class and maintain it through final judgment because they cannot show injury in fact as to all class members. A similar question involving whether every class member needs to have Article III standing at the final stages of a damages suit in a FCRA action is currently pending before the United States Supreme Court. *Ramirez v. TransUnion LLC*, 951 F.3d 1008 (9th Cir. 2020), *cert. granted*, 141 S.Ct. 972 (Mem) (U.S. Dec. 16, 2020) (No. 20-297). It is possible that the Supreme Court's resolution of this issue would have a significant impact, one way or the other, on this case in the absence of settlement. Settlement allows Settlement Class Members to avoid this uncertainty.

Third, in order to succeed on the merits of their claim for statutory damages, Plaintiffs would need to show that any violation of the FCRA was willful. Although Plaintiffs believe that they would have succeeded on this issue, Defendants have vigorously contested this requirement throughout this litigation and would continue to do so. They would likely argue that any violation could not be found

willful as a matter of law, and that Defendants' disclosures were consistent with precedent at the time. Class Counsel recognizes that there is substantial uncertainty as to the outcome of arguments on this issue, and if the Court found that any violation was not willful, then there would be little to no recovery for the Class.

The Settlement provides prompt relief for Settlement Class Members and avoids the risk and expense of continued litigation. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Der-Hacopian v. DarkTrace, Inc.*, No. 18-cv-06726, 2020 WL 7260054, at *5 (N.D. Cal. Dec. 10, 2020) (citation omitted); *see also Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 526 ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.").

The ultimate resolution of Plaintiffs' claims would be a long, arduous process requiring significant expenditures of time and money on behalf of both Parties and the Court. Accordingly, this factor weighs in favor of final approval.[12]

> 2.   The Settlement provides for an effective distribution of proceeds to Settlement Class Members

Pursuant to Rule 23(e)(2)(C)(ii), the Settlement provides for an efficient and effective distribution process by providing an efficient notice program, claims process, and distribution of proceeds. The Settlement Notice, which was approved by the Court, following specific revisions requested by the Court, included a Summary Notice sent via U.S Mail, and email, as well as a reminder notice. Salhab Decl. ¶ 13. Notice via U.S. Mail and email is presumptively reasonable. *See In re Online DVD-Rental*, 779 F.3d at 946 (finding that the notice provided in both mail and email form was sufficient under the Constitution and Rule 23(e)).

---

[12]     This factor overlaps with the second, third, and fifth factors of *In re Online DVD-Rental* relating to the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout the case, and the extent and stage of discovery. 779 F.3d at 944. For the same reasons set forth herein, this factor similarly weighs in favor of approving the Settlement.

-18-

The efficiency of the notice program is shown by the fact that the Summary Notice was successfully delivered to 98.43 % of the Settlement Class, including 55,376 Settlement Class Members via email (81.22% of the Settlement Class) and 11,735 Settlement Class Members via U.S. Mail (17.21% of the Settlement Class). Salhab Decl. ¶ 13. In addition, approximately 8,110 users have visited the Settlement website, further showing the efficiency of the notice program. *Id.* Finally, the Claims Administrator has received 668 phone calls on their dedicated case line, and Class Counsel has handled numerous phone calls and emails from Settlement Class Members regarding the Settlement. *Id.* ¶ 14; Lukasiewicz Decl. ¶ 42.

In addition, the claims process was efficient and effective. As explained above, Settlement Class Members could submit Claim Forms via mail or by the Settlement website. The fact that nearly 3,446 Settlement Class Members did so—including the 38 late claims that the Parties agreed to accept—shows the efficiency of this process. *Id.* ¶ 43. Class Counsel is unaware of any Settlement Class Member who wished to file a claim and was unable to do so. *Id.* In response to concerns raised by the Court, Defendant agreed that the Claim Form did not need to include language requiring Settlement Class Members to attest that they were unaware that they had authorized the procurement of a consumer report and/or were confused by the disclosure forms they received regarding the procurement of a consumer report. *Id.* ¶ 36. Class Counsel believes this language would have been confusing to Settlement Class Members, and therefore, that its removal improved the efficiency of the claims process.

Finally, the Settlement distribution process itself is effective. The Net Settlement Fund will be distributed on a *pro rata* basis to all Settlement Class Members who filed valid Claim Forms. This is fair because all Settlement Class Members had the same alleged injury—improper disclosure of the procurement of a consumer report. The Parties worked with the Claims Administrator to provide several options for payment distribution, including checks, PayPal, ApplePay via e-Mastercard, or digital payment via Zelle or Venmo. Salhab Decl. ¶ 20. These payment options will make it more convenient for Settlement Class Members to receive their share of the Settlement. The Settlement therefore provides an effective "method of distributing relief to the class" and should be approved. Fed. R. Civ. P. 23(e)(2)(C)(ii).

3. <u>The terms of the requested award of attorneys' fees and costs, including timing of payment, also support settlement approval</u>

Under Rule 23(e)(2)(C), the Court considers the terms of any proposed award of attorneys' fees, including timing of payment. As discussed in detail in Plaintiffs' Motion for Attorneys' Fees' (Dkt. No. 48), Class Counsel is seeking the Ninth Circuit's 25% benchmark of attorneys' fees (in this case, $259,368.53) and their out-of-pocket litigation costs ($6,358.30). The 25% benchmark is routinely awarded in FCRA settlements in this Circuit. *See* Dkt. No. 48 at 7-8 (collecting cases). Furthermore, based on the lodestar of $205,988.50 at the time that Plaintiffs' Motion for Attorneys' Fees was filed,[13] this represents a small multiplier of less than 1.5. Although the requested 25% fee award is slightly above Class Counsel's lodestar, the Ninth Circuit has emphasized that "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by *paying them a premium over their normal hourly rates for winning contingency cases.*" *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d. 1291, 1299 (9th Cir. 1994). Had the fee amount been litigated rather than negotiated, a greater multiplier could have been awarded and the fees substantially higher. *Sadowska v. Volkswagen Grp. of Am.*, No. 11-cv-00665, 2013 WL 9600948, at *9 (C.D. Cal. Sept. 25, 2013) (approving negotiated fee award 1.37 times the lodestar and noting that "[m]ultipliers can range from 2 to 4 or even higher." (citation omitted)). Significantly, no Class Member objected to the amount that Class Counsel would seek in fees and costs[14].

Moreover, if the Court grants final  approval of the Settlement and awards attorneys' fees and costs, the fees and costs will be paid at the same time as the payments to Settlement Class Members. Class Counsel, therefore, will be paid only if and when the Settlement Class Members are also compensated.

Therefore, this factor weighs in favor of approval of the Settlement.

---

[13]	Class Counsel's lodestar has only increased during this time given time spent assisting in the administration of the Settlement (including responding to Settlement Class Member questions and preparing this motion). Lukasiewicz Decl. ¶ 51.

[14]	The Long Form Notice specified that Class Counsel intended to request up to 25% of the Gross Settlement Sum (or $259,368.525). *See* Supplemental Declaration of Jessica L. Lukasiewicz in Support of Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement ("Lukasiewicz Supp. Decl."), Exhibit A ¶ 18, Dkt. No. 44-1 (Feb. 17, 2021).

4.    The Parties have no other agreements pertaining to the Settlement

The Court also must evaluate any agreement made in connection with the proposed Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Here, the Settlement before the Court is the only agreement between Plaintiffs and Defendants. Lukasiewicz Decl., ¶ 35.

5.    The Settlement Agreement treats all Settlement Class Members equitably

The final factor that courts consider under Fed R. Civ. P. 23(e)(2) is whether the settlement treats all Settlement Class Members equitably. Here, the Settlement treats all Settlement Class Members exactly the same. Settlement Agreement ¶ 40. How long each Settlement Class Member worked for Defendants, their job title, and their pay rate, is irrelevant to the Settlement allocation formula. *Id.* The entire Net Settlement Sum is being distributed on a *pro rata* basis to Settlement Class Members who filed a non-fraudulent, valid Claim Form certifying that they authorized a background check and/or consumer report in connection with employment. *Id.* Any unclaimed settlement funds (due to uncashed settlement checks) will be re-distributed *pro rata* to Settlement Class Members who cashed their settlement checks or to the designated *cy pres* beneficiary.[15]

Additionally, as discussed in Plaintiffs' Motion for Attorneys' Fees, Costs, and Class Representative Service Awards, Plaintiffs seek Class Representative Service Awards in the amount of $6,000 per Class Representative.  These payments are intended to be in recognition for the services they performed on behalf of the Settlement Class. *See* Hutto Decl. ¶ 14; Melnyk Decl. ¶ 13.

The proposed award is warranted given the Class Representatives' extensive participation in and commitment to the litigation, including numerous telephonic conferences with Class Counsel, assisting with drafting the Complaints and discussing the Settlement. Lukasiewicz Decl. ¶¶ 49-50, 52.

Thus, this factor strongly favors approving the Settlement.

---

[15]    Following the hearing on Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, the Parties agreed to designate the *cy pres* recipient as Employment Rights Project at Bet Tzedek. Lukasiewicz Supp. Decl. ¶¶ 5-6, Dkt. No. 44.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6.   <u>Settlement Class Members' response to the Settlement was uniformly positive</u>

All of the factors of Rule 23(e)(2)(C), therefore, support final approval. In addition, the response of the Settlement Class Members to the Settlement has been overwhelmingly positive.[16]

The reaction of the Settlement Class to the Settlement provides the Court with an on-the-ground view of the Settlement and the opinion of those who matter the most – the Settlement Class Members themselves. A positive class response to a settlement – as evidenced by a small percentage of opt-outs and objections – supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class member." *Roe v. Frito-Lay, Inc.*, No. 14-cv-00751, 2017 WL 1315626, at *4 (N.D. Cal. Apr. 7, 2017) (quoting *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528-29 (C.D. Cal. 2004)); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval."); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 457 (S.D.N.Y. 2004) (noting that there were 12 objectors and 9 opt-outs and holding that "[t]hese extremely low numbers of objectors and opt-outs strongly support settlement approval."); *Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 543-44 (W.D. Wash. 2009) (approving settlement that had 119 opt-outs and 3 objections in a class size of approximately 110,000 to 140,000).

Here, Settlement Class Member's response to the Settlement is overwhelmingly positive. There has only been one single objection to the Settlement and there have only been 23 opt-outs. This represents an opt-out rate of only 0.03%. Furthermore, over 5% of the Settlement Class has submitted a valid Claim Form. This claims rate is comparable to or greater than the claims rate in several of the analogous claims-made settlements involving the FCRA that Plaintiffs identified in the materials submitted with their Motion for Preliminary Approval. *See* Dkt. 38-1 at ¶ 43. "[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent." *Forcellati v. Hyland's, Inc.*, No. 12-1983, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014) (citation omitted). *See e.g.*, *In re Online DVD-Rental*, 779

---

[16]   This is the eighth factor under *In re Online DVD-Rental*. 779 F.3d at 944.

-22-

F.3d at 944-45 (affirming approval of a settlement with a claims rate of less than 3.4%); *In re: HIKO ENERGY LLC Litig.*, No. 14-1771, Dkt. No. 93 (S.D.N.Y. May 9, 2016) (approving class settlement with a claims rate of 3.14%); *Castillo v. Seagate Tech. LLC*, No. 16-1958 (N.D. Cal. 2018), Final Approval Motion, Dkt. No. 80 (Feb. 15, 2018) and Final Approval Order, Dkt. No. 85 (Mar. 14, 2018) (approving a settlement with a claims rate of 4.28%); *Marcum v. Dolgencorp*, No. 12-cv-00108, Dkt. No. 87 (E.D. Va. Feb. 14, 2015) (approving a settlement with a claims rate of 4.87%); *Evans v. Linden Research, Inc.*, 2014 WL 1724891 at *4 (N.D. Cal. Apr. 29, 2014) (approving class settlement with a claims rate of 4.3%); *Rhom v. Thumbtack, Inc.*, 2017 WL 4642409, at *6 (approving class settlement with a claims rate of 3.5%).

Indeed, courts routinely approve class settlements with lower claims' rates. *See Zepeda v. PayPal, Inc.*, No. 10-1668, 2017 WL 1113293, at *16 (N.D. Cal. Mar. 24, 2017), *appeal dismissed*, No. 17-15780, 2017 WL 3138104 (9th Cir. July 11, 2017) (approving class settlement with a claims rate of 2.8%); *Touhey v. United States*, No. 08-1418, 2011 WL 3179036, at *7-8 (C.D. Cal. July 25, 2011) (granting final approval with a 2% claims rate); *Arthur v. SLM Corp.*, No. 10-198 (W.D. Wash. Aug. 8, 2012), Dkt. No. 249 (granting final approval with a claims rate of approximately 2%). While courts do look to the number of class members who submitted claims, ultimately, "[a] settlement's fairness is judged by the opportunity created for the class members, not by how many submit claims. What matters is the settlement's value to each class member – it is ultimately up to class members to participate or not." *Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749, 2014 WL 5419507, at *7 (S.D. Fla. Oct. 24, 2014).[17]

Further, this Settlement provides each Settlement Class Member who submitted a valid Claim Form with approximately $205.96. This compares favorably with similar actions. *See e.g.*, *Syed v. M-I LLC*, No. 14-cv-00742, 2019 WL 3564467, at *6 (E.D. Cal. Aug. 6, 2019) ($46.84 per person); *Dukes v. Air Canada*, No. 18-cv-2176, 2020 WL 487152, at *5 (M.D. FL. Jan. 27, 2020) ($41.61 per person); *In re Uber FCRA Litigation*, 2018 WL 2047362, at *2 ($73.99 and $32.15 per claimant); *Feist v. Petco*

---

[17]    Courts have also found that silence from class members constitutes a favorable response when considering whether to approve a settlement. *See Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 212 (E.D. Pa. 2011) ("Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'" (citation omitted)).

*Animal Supplies, Inc.*, No. 16-cv-1369, 2018 WL 6040801, at *2 (S.D. Cal. Nov. 16, 2018) ($20 per Disclosure Class claimant); *Esomonu v. Omnicare, Inc.*, No. 15-cv-02003, 2019 WL 499750, at *4 (N.D. Cal. Feb. 8, 2019) ($17.31 per claimant).

Moreover, as of the date of this filing, only twenty-three (23) Settlement Class Members have opted out of the Settlement, and only one Settlement Class Member has objected to the Settlement. *See* Lukasiewicz Decl. ¶ 39; *see also* Salhab Decl. ¶¶ 17, 19. The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered when approving a settlement. *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 837 (9th Cir. 1976). Additionally, only one Settlement Class Member has objected, indicating an overwhelmingly positive response to the Settlement. *See In re Omnivision Tech., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (a small number of objections to a settlement indicates a favorable response to a settlement).

Further, the basis of the objection itself is without merit and fails to provide a sufficient legal and/or factual basis for denying the Settlement.  First, the Objector seemingly suggests that the action is criminal, not a civil issue, and Defendants should pay restitution.  This is without merit as Plaintiffs' claim was brought under the FCRA, a civil statute, and involves Defendants' alleged failure to provide proper disclosures when procuring or causing to procure a consumer report on an applicant's behalf. Further, in terms of "restitution," as part of the Settlement, Defendants have already agreed to provide a *pro rata* payment to all Authorized Claimants that is well-within the range of other FCRA settlements. Second, the Objector's contention that he is the only proper class representative is similarly without merit. As an initial matter, the Objector is not one of the class representatives. Additionally, for all the reasons set forth in Plaintiffs' Motion for Attorneys' Fees, Costs, and Representative Service Payments, Representatives Hutto and Jones are more than adequate Class Representatives because as alleged in the complaint, they too had a consumer report procured on their behalf and contend that they were unaware by any disclosures that such report was being procured. Dkt. No. 48. Third, for those reasons set forth above, the Objector's contention that Class Counsel's expenses should not be reimbursed because incurred prior to Settlement is without legal basis. Fourth, without any legal support, the Objector suggests that Defendants must acknowledge that they committed fraud in order for the Settlement to be

-24-

approved. As noted above, Plaintiffs' claim was brought under the FCRA, a statute which does not require Defendants to admit to any type of fraud. Additionally, while not an admission of liability, Plaintiffs notes that Defendants' ceased using the employment authorization and disclosure forms that were challenged in this action in November 2019. Settlement Agreement ¶ 32. Fifth, the Objector's contention that the Settlement should not be approved because all Settlement Class Members should not receive payment all at the same time is without any legal or factual support.  Indeed, for all the reasons this Court preliminarily certified the Settlement Class, the alleged harm is the same for the Settlement Class, and thus the payments should be distributed to all Settlement Class Members at the same time. Therefore, the single objection should be overruled.

Accordingly, as the reaction to the Settlement by Settlement Class Members is overwhelmingly positive, this factor further weighs heavily in favor of final approval of the Settlement.[18]

## V.    THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

Plaintiffs moved to preliminarily certify the Settlement Class for settlement purposes, and the Court granted the motion and conditionally certified the Settlement Class for settlement purposes only. Dkt. No. 47. Where no facts have changed that would affect the requirements of Federal Rule of Civil Procedure 23(a) and 23(b) since the preliminary approval of a settlement, a Court can incorporate by reference its prior analysis as set forth in the preliminary approval order. *Esomonu*, 2019 WL 499750 at *2. Here, no facts have changed since this Court preliminarily approved the Settlement.

Accordingly, the Court should finally certify the Settlement Class as it continues to meet the requirements of Rules 23(a) and (b).

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

---

[18]    The seventh *In re Online DVD-Rental* factor is the presence of a governmental participant. 779 F.3d at 944. While no governmental agencies were parties to this lawsuit, the required governmental agencies were notified pursuant to CAFA, and no governmental agency has raised any objections to the Settlement. Salhab Decl. ¶ 3. This factor supports approval.

1   DATED: May 14, 2021                         Respectfully submitted,

2                                               By:____/s Jessica L. Lukasiewicz_____
                                                **THOMAS & SOLOMON LLP**
3                                               Jessica L. Lukasiewicz (admitted *pro hac vice*)
                                                Jonathan W. Ferris (admitted *pro hac vice*)
4                                               693 East Avenue
                                                Rochester, NY 14607
5                                               Telephone: 585-272-0540
                                                jlukasiewicz@theemploymentattorneys.com
6                                               jferris@theemploymentattorneys.com

7
                                                Adam B. Wolf (Bar No. 215914)
8                                               **PEIFFER WOLF CARR KANE & CONWAY,**
                                                **A PROFESSIONAL LAW CORPORATION**
9                                               4 Embarcadero Center, Suite 1400
                                                San Francisco, CA 94111
10                                              awolf@peifferwolf.com
                                                (415) 766-3545
11

12                                              *Attorneys for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:20-CV-07541-MMC